1                    IN THE UNITED STATES DISTRICT COURT

2                       FOR THE DISTRICT OF OREGON

3

4    LILY HILBURN, et al.,              )
                                        )
5              Plaintiffs,              )     3:16-cv-02116-SI
                                        )
6    vs.                                )     February 1, 2018
                                        )
7    SONNY PERDUE, et al,               )        Portland, Oregon
                                        )
8              Defendants.              )

9

10

11                        (Motion Hearing)

12                   TRANSCRIPT OF PROCEEDINGS

13              BEFORE THE HONORABLE MICHAEL H. SIMON

14               UNITED STATES DISTRICT COURT JUDGE

15

16

17

18

19

20

21

22

23

24

25

1                              APPEARANCES

2
     FOR THE PLAINTIFFS:      Gideon A. Anders
3                             Jessica L. Cassella
                              National House Law Project
4                             703 Market Street, Suite 2000
                              San Francisco, CA   94103
5

6

7    FOR THE DEFENDANTS:      James E. Cox, Jr.
                              Sean E. Martin
8                             U.S. Attorney's Office
                              1000 SW Third Avenue, Suite 600
9                             Portland, OR   97204

10

11

12

13

14

15

16

17

18

19

20

21

22

23   COURT REPORTER:         Dennis W. Apodaca, RDR, FCRR, CRR
                              United States District Courthouse
24                            1000 SW Third Avenue, Room 301
                              Portland, OR   97204
25                            (503) 326-8182

```
 1                      (February 1, 2018)

 2                  P R O C E E D I N G S

 3           (Open court:)

 4           THE CLERK:  Your Honor, this is the time set

 5   for oral argument in civil case 16-2116-SI, McFalls,

 6   et al. versus Perdue, et al.

 7           Counsel, in court, beginning with plaintiff,

 8   please, identify yourselves for the record.

 9           MS. CASSELLA:  Good morning, Your Honor.

10   Jessica Cassella with the National Housing Project on

11   behalf of the plaintiffs.

12           THE COURT:  Good morning.

13           MR. ANDERS:  Gideon Andrews, also on behalf of

14   the plaintiffs, National Housing.

15           MR. COX:  James Cox from the

16   U.S. Attorney's Office appearing on behalf of all

17   defendants.

18           MR. MARTIN:  Good morning, Your Honor.

19   Assistant U.S. attorney Sean Martin for the defendants.

20   We are joined at counsel table by Mr. Wes Cochran, who is

21   the multi-housing family director for the RD Oregon

22   office, and Ms. Zoey Kohm, who is with USDA Office of

23   General Counsel.

24           THE COURT:  Welcome.

25           All right.  We are here on the defendants'
```

1    motion to dismiss the second amended complaint.  I have

2    read your materials, and I look forward to hearing

3    additional argument:  It is defendants' motion.

4            MR. COX:  Thank you, Your Honor.  Your Honor,

5    one thing that is clear from reading plaintiffs' second

6    amended complaint is that plaintiffs and their counsel

7    have real disagreements with how the agency, the Rural

8    Development Office, is running the programs at issue, the

9    Rental Assistance Program and the Voucher Program.  But

10   that is not enough to confer standing onto plaintiff for

11   their claims.

12           The plaintiffs have not shown for any of the

13   claims of relief a particularized imminent injury that

14   would grant them standing for any of the claims.  Now,

15   Your Honor, the specific arguments that defendants raise

16   for the claims differ slightly as to the reason that

17   plaintiffs do not have standing.  The method that the

18   Government would like to separate the argument,

19   Your Honor, is I'll be addressing the flaws in the first

20   and second claims for relief in the second amended

21   complaint, those claims that deal with the civil rights

22   impact analysis; Mr. Martin will be addressing the flaws

23   in plaintiffs' third and fourth claims for relief that

24   deal largely with the RD Voucher Program.

25           THE COURT:  That's fine, of course.  The

1    threshold question is this:  Did the plaintiffs have

2    standing when they commenced this lawsuit?

3              MR. COX:  Yes, Your Honor, for one of their

4    claims of relief.

5              THE COURT:  And I agree.  Now, isn't standing

6    assessed as of the commencement of the action, and if you

7    have standing at the commencement of the action, aren't

8    we done with standing?  Now, if the action progresses and

9    something happens such that there is no longer a

10   particularized injury, because of some development that

11   happens during the pendency of litigation, then doesn't

12   the analysis become, one, not of standing, but of

13   mootness?

14             And if that's the case, and I think it is, then

15   we don't look at standing cases and standing doctrine,

16   but instead at mootness cases and mootness doctrine, and

17   most importantly for purposes of this motion, the

18   exceptions to mootness.

19             Am I wrong?

20             MR. COX:  Your Honor, I would agree with that.

21   The one clarification that I would say is that standing

22   depends on each form of relief that the plaintiffs have

23   requested in their claims for relief.  Your Honor,

24   mootness is the doctrine that the Government relies on.

25             THE COURT:  Then why did you begin your

1    argument then by telling me you are going to talk about

2    standing?

3            MR. COX:  Well, Your Honor, mootness is

4    standing at one point in time --

5            THE COURT:  Wait a minute.  Laidlaw -- first of

6    all, you are basically right, in the olden days.  But

7    when you say that mootness is standing at one point in

8    time, I know you are referring to, or I think you are

9    referring to the old 1980 case from the Supreme Court

10   U.S. v. Parole Commission v. Geraghty.  That language was

11   then followed by the Supreme Court in Arizonans For

12   Official Language from the Supreme Court a little bit

13   later.

14           But Laidlaw says, well, that's a little bit

15   confused, and Laidlaw describes it a little bit

16   differently.  But all of that ultimately goes back to the

17   old Law Review Article by Professor Monahan on

18   constitutional adjudication, where he said, "The

19   requisite personal interest that must exist at the

20   commencement of litigation -- standing -- must continue

21   through its existence -- mootness."

22           So it is not really relevant through its

23   various exceptions.  So if we are talking about does a

24   plaintiff have particularized injury, causal connection,

25   and redressability, the standing requirements, that is

1    assessed at the time of the commencement of the

2    litigation -- period, full stop.

3            If then something happens to perhaps undermine

4    the existence of particularized injury, causation, causal

5    connection, or redressability, all right, that's fine, we

6    will then evaluate it under mootness.  But mootness has a

7    number of different exceptions that don't apply to the

8    standing area, including, I think most relevant for this

9    case, voluntary cessation, and we can evaluate when

10   voluntary cessation does and doesn't apply, but that's

11   analyzed under the doctrine of mootness.

12           Now, if you want to tell me I'm wrong, you can

13   do that, but then you're going to have to give me some

14   authority, because I'm relying on the Supreme Court in

15   Laidlaw and a number of other cases.

16           MR. COX:  Your Honor, I do agree with you.  I

17   think if I would were to apply it specifically to this

18   case and talk about what gave plaintiffs standing, I

19   think Your Honor is familiar with that.  But it might

20   help in looking at the claims, the agency had reached a

21   decision prior to the filing of the complaint here.  That

22   decision was to accept the prepayment application by the

23   borrower on this property.  That final agency action,

24   that decision to accept prepayment, created an imminent

25   injury for the plaintiffs of losing the benefit of rental

 1  assistance and becoming homeless.

 2          THE COURT:  And it gave them basically

 3  particularized injury with causal connection that was

 4  redressable by the Court.  That's why they had standing.

 5  Then the decision changed with the second analysis.  Now

 6  you argue that -- at least what I think you are arguing

 7  is -- now it is moot, because we've made a different

 8  decision.  And I'll say okay, and then we will see

 9  whether or not any of the mootness exceptions apply.

10  What I'm most interested in hearing about is voluntary

11  cessation, but it is a mootness debate we should be

12  having.

13          MR. COX:  Your Honor, the Government agrees

14  that this is about mootness.  That injury that existed at

15  the time of the filing of the complaint, that imminent

16  injury based on the agency's decision to accept the

17  prepayment application no longer exists.  The agency

18  reached the opposite decision, which that basis for

19  standing is now moot.

20          THE COURT:  Because of the agency's action, it

21  essentially voluntarily ceased the harmful effect that

22  was threatening the plaintiff, and that gave them

23  standing at the beginning.  And now the question is:  Do

24  you satisfy the requirements to show that the case is

25  moot, or does it still continue notwithstanding that

1   potential mootness under the voluntary cessation

2   exception?

3           MR. COX:  Your Honor, the exception does not

4   apply.  The decision by the agency is a settled step.

5   The reason for that, Your Honor, is that the borrower in

6   this case, Ms. Shiveley, chose not to elect the option to

7   challenge the agency's findings on that prepayment

8   application.  If she had taken advantage of those appeal

9   options, that exception, voluntary cessation, could

10  certainly apply, because then the agency at the appeals

11  stage could reverse itself.

12          THE COURT:  I understand.  Although let me ask

13  you this:  When does the 180-day period expire?

14          MR. COX:  April 15th of this year.  It began on

15  October 17th.  That's the current --

16          THE COURT:  Go ahead.  October 17th, 2017.  It

17  expires April 15th, 2018.  What happens if on

18  October 16th we look at the file and realize that no

19  offers have been made?  What happens then?

20          MR. COX:  On April 16th?

21          THE COURT:  Yes.

22          MR. COX:  At that point in time the agency, if

23  it determines that no bona fide offers were made, then

24  the agency will give notice to the tenants that the

25  agency is going to be accepting a prepayment application

1    from the borrower because no offers were made during that

2    time period.

3              THE COURT:  And at that time might the tenants

4    or CARE have standing?

5              MR. COX:  No, Your Honor.  The reason is that

6    the claims the plaintiff have made in their second

7    amended complaint against the agency's practices are a

8    settled step.  There are no claims in the second amended

9    complaint that the agency has run the "for sale" process

10   improperly.  The claims are about the agency's conduct

11   with respect to the civil rights impact analysis, and the

12   decision at that stage of the process was in favor of the

13   tenants.  If the agency does wind up accepting a

14   prepayment application, it's not because the civil rights

15   impact analysis resulted in a finding that the agency had

16   to accept the application.  It is for a completely

17   different reason.  It is that no one offered to buy the

18   property.

19             THE COURT:  If no one offers to buy the

20   property, isn't there still the opportunity for the

21   plaintiffs to benefit from the voucher program?

22             MR. COX:  There is that opportunity,

23   Your Honor.

24             THE COURT:  Don't they contend that the

25   regulations implementing that and interpreting and

1    applying that voucher program are invalid under the APA?

2            MR. COX:  They do contend that, Your Honor, but

3    their specific claims about that program would not even

4    be ripe at that point in time once prepayment is

5    accepted.  Their claims, and Mr. Martin can talk in more

6    detail about the unripeness of those claims, but those

7    claims would not even come into ripeness even if the

8    agency accepts a prepayment application.  It is a very

9    different injury than the injury that existed before.

10           THE COURT:  I will want to hear more about

11   that, but let me ask you this:  Maybe the problem I'm

12   about to identify is all my fault.  If it is, I take

13   responsibility.  Should I wait until after April 15th to

14   decide this case so we have a better understanding of

15   where things are?

16           MR. COX:  No, Your Honor.  It would be improper

17   to do that, Your Honor, because there are no claims in

18   the complaint that would be ripe, even at that point in

19   time, and there is no indication or pleading that the

20   agency has done anything incorrect with respect to what

21   is occurring now, the for sale process, and what occurred

22   before then was actually a decision that was in the

23   plaintiffs' favor.

24           THE COURT:  Okay.

25           MR. COX:  Your Honor, I think at this point in

1   time --

2          THE COURT:  You can tag team your partner

3   whenever you want.

4          MR. MARTIN:  Thank you, Your Honor.  You

5   mentioned vouchers, so I thought I would address that.

6   As Mr. Cox indicated, I am going to deal with claims 3

7   and 4.  Claim 3 is what we believe is the main voucher

8   claim in the second amended complaint.  Our earlier

9   briefing, Judge, identified in my view really a concern

10  over a lack of a final agency action and a ripeness

11  problem.

12          I don't want to belabor that briefing, but, you

13  know, our view is that very much vacated the prepayment

14  decision.  It is not the culmination of the agency

15  process at this point, and it doesn't have any legal

16  ramifications because, instead, there is a different

17  process, and the agency set the reset button.

18          So that's really not an appropriate basis for

19  that third claim, as the briefing explained, nor is the

20  annual voucher program, because that's basically a

21  program, a policy announcement, which hasn't changed

22  since 2008.  So we believe, even if that were an

23  inappropriate final agency action to fuel claim 3, there

24  is a statute of limitations problem.

25          THE COURT:  Although aren't statute of

 1   limitations applied differently to an older regulation if

 2   we're talking about an "as applied" challenge versus a

 3   facial challenge?

 4           MR. MARTIN:   Except when it is simply a

 5   renewal.   I think the case law briefing showed you that

 6   when something is simply basically a word-for-word

 7   renewal, that that doesn't stop the statute of

 8   limitations, nor has this been applied, Judge.

 9           There is even a further concern with the third

10   claim, Judge, in that it is really not cognizable that RD

11   is somehow arbitrary and capricious under the APA.   And

12   as plaintiffs allege in claim 3, allowing residents in

13   prepaid buildings to get vouchers, even when there is

14   going to be a restricted use covenant, that can't be a

15   claim because Congress set up the program very plainly,

16   and what RD is doing is simply following what Congress

17   told it to do.

18           THE COURT:   You are getting into the merits,

19   aren't you?

20           MR. MARTIN:   I don't think so, Judge.   Our view

21   is it's not a viable claim, because look at the

22   authorization language for the voucher assistance, for

23   the multifamily housing.

24           THE COURT:   I thought your argument was it is

25   not a viable claim because either there is no standing --

1   and I'm rejecting that standing at the commencement --

2   your argument is either the claim has become moot or that

3   it is, on its face, violative of the statute of

4   limitations.

5           Did I miss something?

6           MR. MARTIN:  Well, looking at the actual

7   statute, our view is this -- RD is tracking exactly what

8   Congress told it to do.  Congress told it to make

9   vouchers eligible to all residents who are residing in an

10  apartment complex when it's prepaid.  So that's exactly

11  what RD has authority to do, and that's how it is

12  administered in the voucher program.  So Congress, in the

13  public law that's referenced by the plaintiffs, in their

14  second amended complaint --

15          THE COURT:  Although I don't see that in your

16  motion to dismiss.  I see your motion to dismiss as

17  consisting of the following three arguments:  On page 12,

18  you argue the first and fourth claims must be dismissed

19  because they are time barred, and plaintiffs lack

20  standing.  Your second argument, on page 16, the second

21  and third claims for relief must be dismissed because

22  there is no final agency action, and plaintiffs lack

23  standing.  Then your final -- I thought that was the

24  third one.  Those are the arguments, not that that they

25  fail to state a claim because there is no arbitrary and

1    capricious violation.  That's the merits, if we get

2    there, and we are not getting there, I don't think.

3              Am I wrong?

4              MR. MARTIN:  Judge, it is correct that our

5    briefing doesn't have this laid out as a specified

6    argument, but I did want to bring it to Your Honor's

7    awareness and offer plaintiffs an opportunity to respond

8    because we believe it is not viable to state a claim,

9    because RD is literally doing what Congress instructed it

10   to do.

11             THE COURT:  I don't mean to be -- well, I do

12   mean to be linear about this.  Your motion right now is

13   on statute of limitations, standing/ripeness, final

14   agency action.  That's what we're going to resolve.  If

15   you want to try to persuade the plaintiffs that they

16   can't win on the merits for the reasons you're

17   identifying now, you go right ahead, but I'll stay out of

18   that discussion.  I will address that if and when we get

19   past the justiciability issues and after I've read both

20   sides' briefs on the merits.

21             MR. MARTIN:  Why don't I move on to the

22   justiciability argument on claim 3.  Our concern is

23   simply whether there is a future voucher-based claim,

24   whether there is a case or controversy essentially,

25   depends on a lot of contingencies that may or may not

1    happen in the future.  Not only would there have to be no

2    bona fide offers received during this 180-day period,

3    right, which would allow prepayment to happen, but then

4    there would have to be a situation where one of these

5    plaintiffs wanted a voucher, right, applied for a

6    voucher, and either the funding ran out, or there was

7    some sort of problem with the application.  But we

8    believe it is speculative and conjecture at this point.

9    There would need to be several steps in the future.

10          THE COURT:  So if we assume that no offers are

11    made by April 15th, you're telling me that it's still not

12    a final agency action because the agency would have to do

13    something.  What would they have to do?

14          MR. MARTIN:  No, I'm not saying that the

15    acceptance of the prepayment -- I would acknowledge that

16    as --

17          THE COURT:  So is it that we don't know yet

18    until April 15th whether there is or is not final agency

19    action?

20          MR. MARTIN:  Right, there isn't final agency

21    action now.  Then even if there is a acceptance of a

22    prepayment, whether there is an actual voucher issue or

23    dispute is really going to depend on a number of factors:

24    That there are going to be residents who have leases that

25    are going to expire in such a way that they won't have

1   the benefit of continuing the lease to the end of its

2   term.

3           THE COURT:  I'm not following you on this

4   point.  If we assume that there is no additional offers

5   by April 15th, on April 16th will there have been final

6   agency action that's reviewable?

7           MR. MARTIN:  Well, actually, Judge, I would

8   have to clarify that and say no, because there is at

9   least an additional step of notifying residents about the

10  acceptance.

11          THE COURT:  Is that ministerial, or is that

12  really what is considered final agency action?  Or is

13  that just ministerial?  It's ministerial, isn't it?

14          MR. MARTIN:  You may be right, Judge.  I think

15  it is a required notice provision.  I think RD takes it

16  seriously.

17          THE COURT:  Absolutely.  But just because

18  something is ministerial and someone takes a ministerial

19  obligation seriously doesn't mean that it has any

20  relevance to a decision on final agency action.

21          MR. MARTIN:  Right.  But my point is, Judge,

22  there being a final agency action, whether on April 16th,

23  like you say, or on some future date, I think it is

24  immaterial, because there is still contingencies after

25  that; that there would have to be particular residents

1    who'd want the vouchers as opposed to other forms of

2    relief or other forms of subsidy.  Not only that, but

3    apply for it in a timely way or in such a way that there

4    is an injury that the program is out of money.

5              THE COURT:  So we might not know until later

6    whether or not people are being hurt and/or how they may

7    be hurt.  That's an interesting point, it is a fair

8    point, but I don't think it affects the final agency

9    action prong of the analysis.

10             MR. MARTIN:  No, it doesn't affect whether the

11   possibility of accepting a future prepayment is a final

12   agency action, Judge, but it affects claim 3 because

13   that's alleging there is a claim about operation of the

14   voucher program that is going to depend on things and

15   conduct and facts and specifics after that final agency

16   action.

17             So it is really -- in a way, the administrative

18   record isn't going to answer that question, right,

19   because it is going to be after that fact -- the

20   circumstances of developing a voucher -- if that makes

21   sense.

22             THE COURT:  Okay.

23             MR. MARTIN:  Judge, why don't I move on to

24   claim 4.

25             THE COURT:  All right.

1          MR. MARTIN:  Now, that's really a claim that

2    plaintiffs have clarified, as we noted in our reply, that

3    is brought on the part of the CARE plaintiff as opposed

4    to the residents, because as the Court is aware, if there

5    is a Golden Eagle II prepayment, there won't be the

6    obligation to have a restrictive use covenant under

7    7 C.F.R. 3560.659(k).  So really that leaves CARE as the

8    only plaintiff on claim 4.  As we briefed, Judge, we

9    believe that the DBSI case establishes that there is a

10   standing problem for that claim 4 for the CARE

11   organization.

12         THE COURT:  But we are not going to talk

13   standing though; we are going to talk mootness, because

14   there is standing as of the commencement of the action.

15   Now, if you want to tell me that claim 4 has become moot,

16   fine, I'll listen to you.

17         MR. MARTIN:  Well, I think it is more ripeness,

18   Judge.

19         THE COURT:  Okay, fine.  If you want to tell me

20   it is not ripe, I may even listen to that.  But I think

21   that it is more of a mootness issue, but that's fine.

22   But the only thing we won't be talking about is standing,

23   because that's determined at the commencement of the

24   litigation.  I don't mean to be rude.  I'm a little flip

25   here.  But I really do think that standing is determined

1    at the beginning of the litigation.  You're welcome to

2    try to show me where you think I'm wrong.

3            MR. MARTIN:  I think another problem, Judge, is

4    final agency action, claim 4, doesn't even yet exist.  I

5    take your point that theoretically there is standing, but

6    the fact is that claim 4 depends on final agency action

7    that doesn't yet exist.  We don't believe -- when there

8    is prepayment, Judge, assuming that there is, for

9    Golden Eagle II, that's not going to change claim 4

10   because claim 4 is about CARE's concern about other RD

11   properties, and the fact those might get prepaid at some

12   point and that once those other properties might get

13   prepaid at some point in the future suggests that they

14   might get be under restrictive use covenants that might

15   be, in the plaintiffs' view, illegally lifted later after

16   prepayment and imposition of the covenants in the first

17   place.

18           So it is almost like thrice removed on ripeness

19   in our view.  We would also point this out, Judge:

20   That's not to say that some day there is a problem with

21   this .662(f) regulation being invoked by RD illegally in

22   the plaintiffs' view -- CARE plaintiffs -- that's going

23   to be a determination by the terms of the rule that

24   would, in our view, be a final agency action that could

25   be brought if and when that ever occurs, but it is not

1    going to be the prepayment on Golden Eagle II, Judge.

2              Just a final point on the regulation.  I think

3    it is important for the Court to know that the language

4    that was challenged in violation of ELIHPA, the

5    regulation actually mirrors, and it is actually slightly

6    more restrictive in defendants' favor than the ELIHPA

7    statute itself on this very important.

8              THE COURT:  We are getting back to the merits,

9    right?

10             MR. MARTIN:  I would say it is really just

11   baseline.

12             THE COURT:  Okay.

13             MR. MARTIN:  For Your Honor's information,

14   that's 42 U.S.C. 1472(c)(1)(A)(ii).  So in our view, when

15   a regulation tracks ELIHPA, pretty much word for word

16   more to the tenants' favor, it may not state it in an

17   appropriate claim, aside from the record, Judge.

18             THE COURT:  It is an interesting point.  Did

19   you make that specific point in your opening motion?

20             MR. MARTIN:  We did not.  Thank you, Judge.

21             THE COURT:  Thank you.

22             Plaintiffs.  Ms. Cassella or Mr. Anders or both

23   of you.

24             Good morning.

25             MS. CASSELLA:  Good morning.

 1              The contours of this case have certainly

 2     changed since the case began, but the housing stability

 3     and the preservation of affordable housing for low-income

 4     tenants in Tillamook County is still at risk.  Tenants

 5     still face displacement and cannot afford to move.  And

 6     despite the fact that the defendant has changed the

 7     conclusion of the Civil Rights Impact Analysis, or the

 8     CRIA, none of the relief that the plaintiffs have sought

 9     in their second amended complaint has been granted.

10     Therefore, the individual plaintiffs are still continuing

11     to seek relief under the third claim, and CARE continues

12     to seek relief claim under all four claims.

13              THE COURT:  Tell me a little bit about claim 4,

14     please, including the argument that defendants make that

15     there is no final agency action yet with respect to

16     claim 4.

17              MS. CASSELLA:  Sure.  Under the fourth claim,

18     CARE's mission continues to be frustrated by RD's

19     regulation, which violated ELIHPA by authorizing the

20     termination of the use restriction.

21              THE COURT:  A little more slowly.

22              MS. CASSELLA:  Sorry.  By authorizing the

23     termination of the use assertion when voucher funding is

24     not available.

25              This was imminently likely to occur at the

1   commencement of the litigation and when standing was

2   established, as Your Honor has noted.   Under the

3   voluntary cessation doctrine, the change CRIA conclusion

4   does not moot this claim.   These illegal regulations are

5   still being enforced.   RD has not made any changes to its

6   regulations, and the presence of two prepayment eligible

7   properties within CARE's service area demonstrates the

8   reasonable expectation that the wrong will be repeated

9   and will again impact CARE.

10          THE COURT:  Along those lines, and we're

11  talking primarily about mootness and the voluntary

12  cessation exception, I think the answer to my question

13  may be obvious, but I want to make sure I'm not

14  misunderstanding something.   You can confirm for me, as

15  CARE's counsel, will CARE continue to file lawsuits or

16  claims in the future if additional properties do receive

17  prepayment approval under these regulations?

18          MS. CASSELLA:  Yes, Your Honor.

19          THE COURT:  Okay.  I thought it was obvious,

20  but I thought it was safe to put it on the record.

21          You may proceed.

22          MS. CASSELLA:  Great.  The defendants also have

23  talked about the third claim, which I thought I would

24  spend a moment on.  So under the third claim, the

25  individual plaintiffs still face homelessness because of

1   RD's administration of the voucher program.  As you

2   noted -- well, in the last 107 days that Golden Eagle II

3   has been on the market, there have been no bona fide

4   offers to purchase the property by a non-profit or public

5   agency.

6         As was noted before, on April 15, the owner is

7   entitled to prepay the RD loan without use restriction.

8   So at that time the individual plaintiffs will become

9   eligible for RD vouchers.  We recently learned that RD

10  has run out of voucher funding during this fiscal year,

11  which would prevent the individual plaintiffs from

12  receiving those necessary vouchers.

13        Under all four claims, CARE's mission continues

14  to be frustrated by the defendants' application of

15  illegal regulations and standards.  The defendant points

16  to the Golden Eagle II revised conclusion of the CRIA to

17  say that plaintiffs now lack standing.  However, as has

18  been noted, RD amended a CRIA conclusion after the

19  initiation of this lawsuit and in response to this

20  lawsuit, so mootness and not standing is the proper

21  doctrine that this Court must use to evaluate the impact

22  of the revised CRIA.

23        As has been noted, specifically the Supreme

24  Court precedent regarding voluntary cessation of alleged

25  illegal conduct places a heavy burden on the defendant to

1   show that there is no reasonable expectation that this

2   wrong will be repeated, and the defendant has not met

3   that burden.

4          So dismissing this case today would set a

5   dangerous precedent.  It would allow RD to continue to

6   rely upon these illegal regulations and practices,

7   forcing small, local nonprofits like CARE and low-income

8   tenants nationwide to continue to spend valuable time and

9   resources challenging each and every CRIA that relies

10  upon the challenged regulatory standard.

11         THE COURT:  If the regulations are unlawful,

12  why hasn't your statute of limitations challenge expired?

13         MS. CASSELLA:  Sure.  So the plaintiffs' claims

14  are not barred by statute of limitation because three of

15  the claims challenge RD's regulations as applied, and the

16  fourth claim is a facial challenge to RD's yearly

17  published --

18         THE COURT:  Talk to me about the "as applied"

19  challenge.  In what way are you challenging them as being

20  applied?

21         MS. CASSELLA:  Sure.  So the first, second, and

22  fourth claims challenge RD's prepayment regulations, as

23  applied.  The Golden Eagle II prepayment process that

24  began in mid-2015 relied upon the challenged regulations.

25  RD approved the Golden Eagle II prepayment, subject to

1  use restrictions in November of 2015.  So even though the

2  drafted regulations were drafted several years ago, and

3  although RD first processed prepayment requests many

4  years before that, CARE was first harmed in 2015 when RD

5  applied the regulations to a property within its service

6  area.

7           THE COURT:  And so if you're challenging those

8  regulations, as applied in 2015, and if you had standing

9  at the time you challenged them, and it was timely at the

10 time you challenged them, and maybe now things have

11 changed with CRIA II, your position is, well, all right,

12 fine, but that's a mootness analysis.  We then turn to

13 the voluntary cessation exception, and for the reasons

14 you've argued it is not moot.

15          MS. CASSELLA:  Yes, Your Honor.

16          THE COURT:  Okay.  I understand.

17          MS. CASSELLA:  Okay.

18          THE COURT:  You can say anything further you

19 want.  I have no more questions at this time.

20          MS. CASSELLA:  Great.

21          THE COURT:  But I'm not shy.

22          All right.  Thank you.

23          Mr. Anders, did you want to say something?

24          MR. ANDERS:  No.  Just to clarify one thing,

25 Your Honor.

1              THE COURT:  Wait.  It is funny though.  I said,

2    "Do you want to say anything?"  You said, "No."  Then you

3    say, "One more thing."

4              MR. ANDERS:  I want to correct something my

5    colleague mentioned.  RD has not fully run out of voucher

6    funding for the current fiscal year.  Under the

7    continuing resolution that it has been operating under,

8    it can only spend a portion of the funds that it had last

9    year commensurate with the time and during this period

10   the agency has run out of voucher funding.

11             The other thing is that it is very likely that

12   the agency will also run out of funding by the end of the

13   fiscal year because, at least so far as we have been able

14   to see, Congress has only approved about $19 million for

15   the voucher program for this fiscal year, and last year

16   the agency spent $22.4 million for the voucher program,

17   and each year the amount that the agency has spent for

18   the vouchers has increased.  So we are estimating that

19   the agency will need probably at least somewhere between

20   $23 million and $25 million for the voucher program for

21   this fiscal year, and it would only have $22 million.

22             THE COURT:  Although it may be obvious, I would

23   appreciate it if you would spell it out for the record,

24   what would be the implication of the agency running out

25   of funds for the voucher program.

1          MR. ANDERS:  Yes.  It means they cannot issue

2   vouchers or renew vouchers to residents who become

3   eligible for vouchers or renew vouchers for people who

4   need renewal of the voucher.

5          I would like to point out, with respect to

6   claim 4, we have argued that RD is improperly issuing

7   vouchers to people who don't need them, and the

8   Government has conceded in its answer to our first

9   complaint that over 50 percent of its funding for the

10  voucher program go to people who are living in

11  developments with use restrictions, and our claim is that

12  those people do not need vouchers unless they move from

13  those developments.  So as much as $10 million or $11

14  million is being spent by the agency for vouchers that

15  don't need to be issued.

16         THE COURT:  Just to make sure I understand the

17  context of what we're talking about, now you're getting

18  to the merits, right?  That's okay.

19         MR. ANDERS:  I'm talking about the harm or

20  potential harm to the residents.

21         THE COURT:  Okay.  That's fine.  Thank you very

22  much.

23         MR. ANDERS:  Thank you.

24         THE COURT:  Back to you, Mr. Cox, or

25  Mr. Martin, or both.

1          MR. COX:   Thank you, Your Honor.

2          Plaintiffs' counsel pointed out correctly the

3    burden that the Government bears here under the voluntary

4    cessation exception, but the application of it is really

5    the key here.   There is a heavy burden for the Government

6    to show that this wrong will not be repeated.   It's

7    important, I think, for the Court to realize what is the

8    wrong that occurred here.   What is that wrong?   The wrong

9    that occurred here is that the Government did an

10   incorrect Civil Rights Impact Analysis.   The Government

11   acknowledged that, and the Government went back and did a

12   much more robust, much more thorough Civil Rights Impacts

13   Analysis.

14         THE COURT:   Which I give them credit for,

15   although I do want to acknowledge that you only told me

16   you were going to do that after you saw my draft opinion

17   tentatively granting preliminary injunction.

18         MR. COX:   That is correct.

19         THE COURT:   But I still give you credit for

20   doing that.

21         MR. COX:   Your Honor, the Government went back

22   and reached the opposite conclusion in its new Civil

23   Rights Impact Analysis.   So that wrong that was the basis

24   for the plaintiffs' injury initially in this case does no

25   longer exist and cannot exist, and the Government's

1    position is that just because the Government did one step

2    wrong in a fairly complex program does not give the

3    plaintiffs at any point thereafter to be able to bring

4    claims about any other aspect of a very long and complex

5    program.

6         The problem that the plaintiffs have is that

7    their first two claims for relief are completely moot.

8    There is no way that the plaintiffs can show any injury

9    from the Civil Rights Impact Analysis that was done on

10   Golden Eagle II.

11        Your Honor, we have been tossing around the

12   term "final agency action" here.  Certainly there is a

13   final agency action that will occur on this prepayment

14   application in a few months.  There is no question about

15   that.  But that doesn't mean that that is a final agency

16   action with respect to the third and fourth claims for

17   relief, which deal with a completely different program, a

18   program for which the plaintiffs are not even eligible to

19   participate in at this point in time.

20        In fact, Your Honor, on that fourth claim for

21   relief, the Government never took a final agency action

22   with respect to the Golden Eagle II property.  It never

23   issued use restrictions and then said, "Okay, we're

24   lifting those use restriction."  That would be a final

25   agency action on the fourth claim for relief.  That

1    didn't even occur at the commencement of this case.  It

2    was a different agency action regarding the acceptance of

3    prepayment.

4            And the plaintiffs have really conceded now, by

5    acknowledging that the tenants do not have standing to

6    bring -- the tenants are not bringing that fourth claim

7    for relief, Your Honor, that there is no chance that that

8    regulation is ever going to be applied to Golden Eagle

9    II, because a prepayment here would occur without use

10   restrictions, if it occurs.  And so for that reason, that

11   claim for relief clearly has nothing to do with the

12   Golden Eagle II property.

13           Your Honor, with respect to the funding of the

14   vouchers issue, the plaintiffs acknowledge in footnote 7,

15   I believe of their opposition brief, that when there had

16   been funding shortages in the past, the agency has taken

17   steps to ensure that tenants are able to get funding for

18   their vouchers.

19           So, Your Honor, for these reasons the

20   Government's position is that there was a flaw that the

21   agency took at the beginning of this case that created an

22   injury that gave the plaintiffs standing.  That flaw has

23   been remedied by a step that can no longer be changed, a

24   settled step.  Therefore, the plaintiffs do not have a

25   cognizable injury that would give them any basis to bring

1    any of the claims for relief in their second amended

2    complaint.

3              THE COURT:  If you are waiting for a question,

4    you're not going to get one.

5              Thank you, Mr. Cox.

6              Mr. Martin.

7              MR. MARTIN:  A few quick points, Judge.

8              THE COURT:  Take your time.

9              MR. MARTIN:  As Mr. Anders brought up the issue

10   of what he called harm, with reference to claim 3 and

11   that RD is choosing, under their argument, to provide

12   vouchers to residents in prepaid properties, even if

13   there is a restrictive covenant, which they believe is a

14   violation of ELIHPA, I would again, in light of him

15   making out that case for harm, ask Your Honor consider

16   looking at the annual statutory appropriations from

17   Congress, which we believe very plainly instructs RD to

18   make those vouchers available to all residents in

19   properties that are prepaid after 2005.  So we would

20   implore you to consider that that alleged harm really is

21   a phantom harm for claim 3 in that RD is doing what it

22   was told to do.

23             Secondly, Judge, if you are considering for any

24   reason -- we don't think it makes sense, and what I have

25   been arguing and Mr. Cox has been arguing, waiting until

1   the prepayment really affects the viability of the

2   claims.  But if Your Honor is considering that, we would

3   certainly want to renew our protective order motion

4   against discovery because we believe that even if there

5   were a claim --

6            THE COURT:  Nobody is asking me to wait, so I'm

7   not going to wait.

8            MR. MARTIN:  Thank you, Judge.

9            THE COURT:  Okay.  Ms. Cassella or Mr. Anders.

10            MS. CASSELLA:  Your Honor, I am going to

11   respond.

12            THE COURT:  I'm going to let each side continue

13   to respond to each other until you all get exhausted or

14   you repeat yourselves.

15            MS. CASSELLA:  Excellent.  So the wrong at

16   issue here is not the changed CRIA conclusion, but the

17   illegal regulations and standards that RD continues to

18   apply.  Even though the revised CRIA has a changed

19   conclusion, the amended CRIA -- the CRIA form itself and

20   the analysis and language of the revised CRIA still

21   continue to rely upon disputed and challenged regulations

22   at issue in this case, specifically the disproportionate

23   adverse impact standards that we have been discussing.

24            Second, the defendant continues to ignore CARE

25   and the frustration of its mission that these regulations

1    present.  The two prepayment eligible properties within

2    its service area speak to voluntary cessation and

3    mootness doctrine and the likelihood of recurrence,

4    which, again, the defendant still has not met here.

5              As the defendant just mentioned as well,

6    Congress has said that vouchers need to be provided to

7    all residents.  That cannot happen if there are no

8    vouchers to provide to residents, so if Golden Eagle II

9    has prepaid for use restrictions, and there are no funds

10   for vouchers, the very low-income individual plaintiffs

11   will face very large rent increases and homelessness.

12   Because RD has run out of voucher funding, this puts

13   their house being stability at risk.

14             Even if voucher funding is available, the

15   individual plaintiffs are very likely to be injured by

16   RD's administration of the vouchers.  Currently RD does

17   not allow residents to apply for vouchers until the date

18   of prepayment.  Also, RD gives itself 90 days to provide

19   vouchers to residents after the prepayment, but only

20   authorizes retroactive prepayments for a 60-day period.

21   So these gaps have been created by RD and subjects

22   voucher-eligible residents to having to pay the full

23   market rent, which these extremely low-income residents

24   cannot afford.  That will affect both the individual

25   plaintiffs as well as CARE that will need to step in and

 1   provide emergency rental assistance and resources in that

 2   situation.

 3           Thank you.

 4           THE COURT:  Thank you.

 5           Anything further in response, either Mr. Cox or

 6   Mr. Martin?

 7           MR. COX:  Your Honor, one point.  Your Honor, I

 8   want to follow-up on one thing that Mr. Martin mentioned

 9   about discovery and go into that a little bit.  I'm not

10   repeating what he said.  The agency right now has engaged

11   in a very important process, which is monitoring this

12   sale process, and it is very possible, but we can't say

13   what will happen, but it is possible that offers could

14   come in that need to be assessed, that financing might

15   need to be looked at, and the agency has limited

16   resources within the state office to do these things.

17           There is currently no motion for injunctive

18   relief pending right now, and the Government would ask

19   the Court that if for any reason the Court is not

20   inclined to grant defendants' motion, that the Court

21   would consider not moving forward in this case or

22   allowing the agency to focus its limited resources in

23   ensuring that it does the right thing with this process,

24   which very could possibly result in this property staying

25   in the program.  We don't know for sure, but it is

1    important that the agency get this right, Your Honor.

2             Thank you.

3             THE COURT:  I agree.  All right.  Let me

4    comment on that, unless Mr. Anders or Ms. Cassella, you

5    have something you want to say.

6             MR. ANDERS:  Your Honor, the matter is not

7    going to be resolved on April 15th, even if there is an

8    offer.  The purchaser, once the purchaser makes an offer,

9    has 24 months to conclude the offer and the purchase.  So

10   we may not know, even if there is an offer, which we

11   suspect may not be at this point, that we will not know

12   the final eligibility questions as far as vouchers until

13   24 months from April 15th.

14            THE COURT:  Thank you.  Anything else from

15   anyone?

16            All right.  Following up on Mr. Cox's point,

17   let me say this:  I am not going to rule from the bench.

18   Justiciable issues are, as we have discussed, nuanced,

19   difficult, and interesting in my opinion.  I don't know

20   whether that's good or bad news to you, but I find them

21   interesting.

22            I've spent some time on this case already.  I'm

23   going to spend a little bit more time, and I'll try to

24   get you a final decision fairly soon.  I'm not going to

25   wait until April 15th.  Since no one is asking me to

1    wait, I am not going to.  I will get you decision.  If I

2    do find that the case is not currently justiciable, well,

3    then that will be the end of it, and the plaintiffs can

4    appeal.  If I do find that the case is justiciable, then

5    I would encourage the parties, consistent with what

6    Mr. Cox just said, to confer with each other regarding an

7    appropriate schedule.  As long as both sides agree, I

8    will give both sides the deference that would be

9    appropriate, if you agree on an appropriate schedule and

10   how to proceed going forward, whether it be on discovery

11   issues or, more importantly, on an evaluation of the

12   merits when we get to the merits.

13           So if I decide the case is justiciable at this

14   time, I encourage the parties to confer with each other

15   meaningfully and see if you can stipulate to an

16   appropriate schedule.  If you can't, that's fine.  Then

17   send me each of your separate proposals of what you would

18   each recommend and get on the telephone and talk about

19   that.  Again, if you all agree on an appropriate

20   proposal, you will not get any push-back from me if there

21   is an agreement.

22           That said, let me also suggest this, because I

23   really don't want to get into the merits right now.  I

24   appreciate some of the background that the defendants are

25   providing and the responses from the plaintiffs.  And if

1    and when we get to the merits, there will be very

2    interesting and important issues that we will have to

3    analyze.

4              We have right now in this courtroom very

5    sophisticated and understanding counsel and clients who

6    understand the merits of the respective arguments,

7    frankly, at this stage much better than I do.  I'm going

8    to leave the bench in a few minutes, taking this pending

9    motion to dismiss under advisement.  But I courage both

10   sides to use this opportunity, now that you are all here

11   together, and I understand that Ms. Cassella and

12   Mr. Anders are up from San Francisco.  We have clients

13   here with their capable counsel, Mr. Cox and Mr. Martin.

14   Maybe the six of you should spend some time, if you

15   want -- we will give you a room here, although the

16   U.S. Attorney's Office is in the building -- maybe the

17   six of you should have a little bit of a discussion right

18   now either about the merits and make sure you each

19   understand the respective positions, I guess as you

20   probably do, but also explore are there other things that

21   the parties can reach agreement on to resolve this

22   dispute.

23             If you can, fine.  And if you can't, well,

24   that's what courts are for.  We are here to resolve

25   disputes that are justiciable, of course.  But I do urge

1    you to think about taking this opportunity, since all six

2    of you are here together at this time.

3              Enough said on that.  I will take the pending

4    motion under advisement, and I appreciate the fine

5    briefing on both sides and the fine oral advocacy on both

6    sides.

7              The motion is under advisement.

8              Thank you.

9              (End of proceedings.)

--oOo--

   I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

```
/s/ Dennis W. Apodaca                      March 13, 2018
DENNIS W. APODACA, RDR, RMR, FCRR, CRR               DATE
Official Court Reporter
```

**MR. ANDERS: [7]** 3/12 26/23 27/3 27/25 28/18 28/22 36/5
**MR. COX: [20]** 3/14 4/3 5/2 5/19 6/2 7/15 8/12 9/2 9/13 9/19 9/21 10/4 10/21 11/1 11/15 11/24 28/25 29/17 29/20 35/6
**MR. MARTIN: [23]** 3/17 12/3 13/3 13/19 14/5 15/3 15/20 16/13 16/19 17/6 17/13 17/20 18/9 18/22 18/25 19/16 20/2 21/9 21/12 21/19 32/6 32/8 33/7
**MS. CASSELLA: [13]** 3/8 21/24 22/16 22/21 23/17 23/21 25/12 25/20 26/14 26/16 26/19 33/9 33/14
**THE CLERK: [1]** 3/3
**THE COURT: [61]**

**$**

**$10 [1]** 28/13
**$11 [1]** 28/13
**$19 [1]** 27/14
**$19 million [1]** 27/14
**$22 [1]** 27/21
**$22 million [1]** 27/21
**$22.4 [1]** 27/16
**$22.4 million [1]** 27/16
**$23 [1]** 27/20
**$25 [1]** 27/20
**$25 million [1]** 27/20

**-**

**--oOo [1]** 40/3

**.**

**.662 [1]** 20/21

**/**

**/s [1]** 40/10

**1**

**1000 [2]** 2/8 2/24
**107 [1]** 24/2
**12 [1]** 14/17
**13 [1]** 40/10
**1472 [1]** 21/14
**15 [1]** 24/6
**15th [6]** 9/17 16/11 17/5 36/7 36/13 36/25
**16 [1]** 14/20
**16-2116-SI [1]** 3/5
**16th [4]** 9/18 9/20 17/5 17/22
**17th [2]** 9/15 9/16
**180-day [2]** 9/13 16/2
**1980 [1]** 6/9

**2**

**2000 [1]** 2/4
**2005 [1]** 32/19
**2008 [1]** 12/22
**2015 [4]** 25/24 26/1 26/4 26/8
**2017 [1]** 9/16
**2018 [4]** 1/6 3/1 9/17 40/10
**24 [2]** 36/9 36/13

**3**

**301 [1]** 2/24
**326-8182 [1]** 2/25
**3560.659 [1]** 19/7
**3:16-cv-02116-SI [1]** 1/5

**4**

**42 [1]** 21/14

**5**

**50 percent [1]** 28/9

**503 [1]** 2/25

**6**

**60-day [1]** 34/20
**600 [1]** 2/8

**7**

**7 C.F.R [1]** 19/7
**703 [1]** 2/4

**8**

**8182 [1]** 2/25

**9**

**90 [1]** 34/18
**94103 [1]** 2/4
**97204 [2]** 2/9 2/24

**A**

**able [3]** 27/13 30/3 31/17
**about [30]** 6/1 6/23 7/18 8/10 8/14 10/10 11/3 11/6 11/10 11/12 13/2 15/12 17/9 18/13 19/22 20/10 20/10 22/13 23/11 23/23 25/18 27/14 28/17 28/19 30/4 30/14 35/9 37/18 38/18 39/1
**above [1]** 40/7
**above-entitled [1]** 40/7
**Absolutely [1]** 17/17
**accept [4]** 7/22 7/24 8/16 10/16
**acceptance [4]** 16/15 16/21 17/10 31/2
**accepted [1]** 11/5
**accepting [3]** 9/25 10/13 18/11
**accepts [1]** 11/8
**acknowledge [3]** 16/15 29/15 31/14
**acknowledged [1]** 29/11
**acknowledging [1]** 31/5
**action [30]** 5/6 5/7 5/8 7/23 8/20 12/10 12/23 14/22 15/14 16/12 16/19 16/21 17/6 17/12 17/20 17/22 18/9 18/12 18/16 19/14 20/4 20/6 20/24 22/15 30/12 30/13 30/16 30/21 30/25 31/2
**actual [2]** 14/6 16/22
**actually [4]** 11/22 17/7 21/5 21/5
**additional [4]** 4/3 17/4 17/9 23/16
**address [2]** 12/5 15/18
**addressing [2]** 4/19 4/22
**adjudication [1]** 6/18
**administered [1]** 14/12
**administration [2]** 24/1 34/16
**administrative [1]** 18/17
**advantage [1]** 9/8
**adverse [1]** 33/23
**advisement [3]** 38/9 39/4 39/7
**advocacy [1]** 39/5
**affect [2]** 18/10 34/24
**affects [3]** 18/8 18/12 33/1
**afford [2]** 22/5 34/24
**affordable [1]** 22/3
**after [10]** 11/13 15/19 17/24 18/15 18/19 20/15 24/18 29/16 32/19 34/19
**again [4]** 23/9 32/14 34/4 37/19
**against [2]** 10/7 33/4
**agency [55]**
**agency's [5]** 8/16 8/20 9/7 10/7 10/10
**ago [1]** 26/2
**agree [7]** 5/5 5/20 7/16 36/3 37/7 37/9 37/19
**agreement [2]** 37/21 38/21
**agrees [1]** 8/13
**ahead [2]** 9/16 15/17
**al [4]** 1/4 1/7 3/6 3/6
**all [20]** 3/16 3/25 6/6 6/16 7/5 11/12 14/9 18/25 22/12 24/13 26/11 26/22 32/18

33/13 34/7 36/3 36/16 37/19 38/10 39/1
**alleged [2]** 13/12
**allege [2]** 24/24 32/20
**alleged [2]** 18/13
**alleging [1]** 18/13
**allow [3]** 16/3 25/5 34/17
**allowing [2]** 13/12 35/22
**almost [1]** 20/18
**Along [1]** 23/10
**already [1]** 36/22
**also [7]** 3/13 20/19 23/22 27/12 34/18 37/22 38/20
**although [7]** 9/12 12/25 14/15 26/3 27/22 29/15 38/15
**am [6]** 5/19 12/6 15/3 33/10 36/17 37/1
**amended [11]** 4/1 4/6 4/20 10/7 10/8 12/8 14/14 22/9 24/18 32/1 33/19
**amount [1]** 27/17
**analysis [13]** 4/22 5/12 8/5 10/11 10/15 18/9 22/7 26/12 29/10 29/13 29/23 30/9 33/20
**analyze [1]** 38/3
**analyzed [1]** 7/11
**and/or [1]** 18/6
**Anders [7]** 2/2 21/22 26/23 32/9 33/9 36/4 38/12
**Andrews [1]** 3/13
**announcement [1]** 12/21
**annual [2]** 12/20 32/16
**another [1]** 20/3
**answer [3]** 18/18 23/12 28/8
**any [14]** 4/12 4/14 8/9 12/15 17/19 23/5 30/3 30/4 30/8 31/25 32/1 32/23 35/19 37/20
**anyone [1]** 36/15
**anything [5]** 11/20 26/18 27/2 35/5 36/14
**APA [2]** 11/1 13/11
**apartment [1]** 14/10
**Apodaca [3]** 2/23 40/10 40/11
**appeal [2]** 9/8 37/4
**appeals [1]** 9/10
**APPEARANCES [1]** 2/1
**appearing [1]** 3/16
**application [11]** 7/22 8/17 9/8 9/25 10/14 10/16 11/8 16/7 24/14 29/4 30/14
**applied [11]** 13/1 13/2 13/8 16/5 25/15 25/18 25/20 25/23 26/5 26/8 31/8
**apply [9]** 7/7 7/10 7/17 8/9 9/4 9/10 18/3 33/18 34/17
**applying [1]** 11/1
**appreciate [3]** 27/23 37/24 39/4
**appropriate [7]** 12/18 21/17 37/7 37/9 37/9 37/16 37/19
**appropriations [1]** 32/16
**approval [1]** 23/17
**approved [2]** 25/25 27/14
**April [13]** 9/14 9/17 9/20 11/13 16/11 16/18 17/5 17/5 17/22 24/6 36/7 36/13 36/25
**April 15 [1]** 24/6
**April 15th [5]** 16/11 17/5 36/7 36/13 36/25
**April 15th of [1]** 9/14
**April 15th to [1]** 11/13
**April 15th whether [1]** 16/18
**April 16th [3]** 9/20 17/5 17/22
**arbitrary [2]** 13/11 14/25
**are [52]**
**area [4]** 7/8 23/7 26/6 34/2
**aren't [3]** 5/7 12/25 13/19
**argue [2]** 8/6 14/18
**argued [2]** 26/14 28/6
**arguing [3]** 8/6 32/25 32/25
**argument [11]** 3/5 4/3 4/18 6/1 13/24 14/2 14/20 15/6 15/22 22/14 32/11

## A

**arguments [4]** 4/15 14/17 14/24 38/6
**Arizonans [1]** 6/11
**around [1]** 30/11
**Article [1]** 6/17
**as [41]**
**aside [1]** 21/17
**ask [4]** 9/12 11/11 32/15 35/18
**asking [2]** 33/6 36/25
**aspect [1]** 30/4
**assertion [1]** 22/23
**assessed [3]** 5/6 7/1 35/14
**assistance [4]** 4/9 8/1 13/22 35/1
**Assistant [1]** 3/19
**assume [2]** 16/10 17/4
**assuming [1]** 20/8
**attorney [1]** 3/19
**Attorney's [3]** 2/8 3/16 38/16
**authority [2]** 7/14 14/11
**authorization [1]** 13/22
**authorizes [1]** 34/20
**authorizing [2]** 22/19 22/22
**available [3]** 22/24 32/18 34/14
**Avenue [2]** 2/8 2/24
**aware [1]** 19/4
**awareness [1]** 15/7

## B

**back [6]** 6/16 21/8 28/24 29/11 29/21 37/20
**background [1]** 37/24
**bad [1]** 36/20
**barred [2]** 14/19 25/14
**based [2]** 8/16 15/23
**baseline [1]** 21/11
**basically [4]** 6/6 8/2 12/20 13/6
**basis [4]** 8/18 12/18 29/23 31/25
**be [53]**
**bears [1]** 29/3
**because [36]** 5/10 7/14 8/7 8/20 9/10 10/1 10/14 11/17 12/16 12/20 13/15 13/21 13/25 14/19 14/21 14/25 15/8 15/9 16/12 17/8 17/17 17/24 18/12 18/19 19/4 19/13 19/23 20/10 23/25 25/14 27/13 30/1 31/9 33/4 34/12 37/22
**become [5]** 5/12 14/2 19/15 24/8 28/2
**becoming [1]** 8/1
**been [17]** 9/19 13/8 17/5 22/9 24/3 24/3 24/18 24/23 27/7 27/13 30/11 31/16 31/23 32/25 32/25 33/23 34/21
**before [1]** 1/13 11/9 11/22 24/6 26/4
**began [3]** 9/14 22/2 25/24
**begin [1]** 5/25
**beginning [4]** 3/7 8/23 20/1 31/21
**behalf [3]** 3/11 3/13 3/16
**being [7]** 17/22 18/6 20/21 23/5 25/19 28/14 34/13
**belabor [1]** 12/12
**believe [10]** 12/7 12/22 15/8 16/8 19/9 20/7 31/15 32/13 32/17 33/4
**below [1]** 40/5
**bench [2]** 36/17 38/8
**benefit [3]** 7/25 10/21 17/1
**better [1]** 11/14 38/7
**between [1]** 27/19
**bit [7]** 6/12 6/14 6/15 22/13 35/9 36/23 38/17
**bona [3]** 9/23 16/2 24/3
**borrower [1]** 7/23 9/5 10/1
**both [9]** 15/19 21/22 28/25 34/24 37/7 37/8 38/9 39/5 39/5
**brief [1]** 31/15

**briefed [1]** 19/8
**briefing [6]** 12/9 12/12 12/19 12/21 13/5 39/5
**briefs [1]** 15/20
**bring [4]** 15/6 30/3 31/6 31/25
**bringing [1]** 31/6
**brought [3]** 19/3 20/25 32/9
**building [1]** 38/16
**buildings [1]** 13/13
**burden [4]** 24/25 25/3 29/3 29/5
**button [1]** 12/17
**buy [2]** 10/17 10/19

## C

**C.F.R [1]** 19/7
**CA [1]** 2/4
**called [1]** 32/10
**can [13]** 7/9 7/12 11/5 12/2 23/14 26/18 27/8 30/8 31/23 37/3 37/15 38/21 38/23
**can't [5]** 13/14 15/16 35/12 37/16 38/23
**cannot [5]** 22/5 28/1 29/25 34/7 34/24
**capable [1]** 38/13
**capricious [2]** 13/11 15/1
**CARE [12]** 10/4 19/3 19/7 19/10 20/22 22/11 23/9 23/15 25/7 26/4 33/24 34/25
**CARE's [5]** 20/10 22/18 23/7 23/15 24/13
**case [24]** 3/5 5/14 6/9 7/9 7/18 8/24 9/6 11/14 13/5 15/24 19/9 22/1 22/2 25/4 29/24 31/1 31/21 32/15 33/22 35/21 36/22 37/2 37/4 37/13
**cases [3]** 5/15 5/16 7/15
**Cassella [6]** 2/3 10/21 21/22 33/9 36/4 38/11
**causal [3]** 6/24 7/4 8/3
**causation [1]** 7/4
**cause [1]** 40/7
**ceased [1]** 8/21
**certainly [4]** 9/10 22/1 30/12 33/3
**certified [1]** 40/9
**certify [1]** 40/5
**cessation [1]** 7/9 7/10 8/11 9/1 9/9 23/3 23/12 24/24 26/13 29/4 34/2
**challenge [8]** 9/7 13/2 13/3 25/12 25/15 25/16 25/19 25/22
**challenged [6]** 21/4 25/10 25/24 26/9 26/10 33/21
**challenging [3]** 25/9 25/19 26/7
**chance [1]** 31/7
**change [2]** 20/9 23/3
**changed [8]** 8/5 12/21 22/2 22/6 26/11 31/23 33/16 33/18
**changes [1]** 23/5
**choosing [1]** 32/11
**chose [1]** 9/6
**circumstances [1]** 18/20
**civil [9]** 3/5 4/21 10/11 10/14 22/7 29/10 29/12 29/22 30/9
**claim [44]**
**claim 4 [1]** 22/16
**claims [32]** 4/11 4/13 4/14 4/16 4/20 4/21 4/23 5/4 5/23 7/20 10/6 10/8 10/10 11/3 11/5 11/6 11/7 11/17 12/6 14/18 14/21 22/12 23/16 24/13 25/13 25/15 25/22 30/4 30/7 30/16 32/1 33/2
**clarification [1]** 5/21
**clarified [1]** 19/2
**clarify [2]** 17/8 26/24
**clear [1]** 4/5
**clearly [1]** 31/11
**clients [2]** 38/5 38/12
**Cochran [1]** 3/20
**cognizable [2]** 13/10 31/25
**colleague [1]** 27/5

**come [2]** 11/7 35/14
**comes [3]** 7/2 17/3 26/12
**commencement [9]** 5/6 5/7 6/20 7/1 14/1 19/14 19/23 23/17 23/17
**commensurate [1]** 27/9
**comment [1]** 36/4
**Commission [1]** 6/10
**complaint [13]** 4/1 4/6 4/21 7/21 8/15 10/7 10/9 11/18 12/8 14/14 22/9 28/9 32/2
**completely [3]** 10/16 30/7 30/17
**complex [3]** 14/10 30/2 30/4
**conceded [2]** 28/8 31/4
**concern [4]** 12/9 13/9 15/22 20/10
**conclude [1]** 36/9
**conclusion [7]** 22/7 23/3 24/16 24/18 29/22 33/16 33/19
**conduct [3]** 10/10 18/15 24/25
**confer [3]** 4/10 37/6 37/14
**confirm [1]** 23/14
**conformed [1]** 40/8
**confused [1]** 6/15
**Congress [9]** 13/15 13/16 14/8 14/8 14/12 15/9 27/14 32/17 34/6
**conjecture [1]** 16/8
**connection [1]** 6/24 7/5 8/3
**consider [3]** 32/15 32/20 35/21
**considered [1]** 17/12
**considering [2]** 32/23 33/2
**consistent [1]** 30/5
**consisting [1]** 14/17
**constitutional [1]** 6/18
**contend [2]** 10/24 11/2
**context [1]** 28/17
**contingencies [2]** 15/25 17/24
**continue [7]** 6/20 8/25 23/15 25/5 25/8 33/12 33/21
**continues [5]** 22/11 22/18 24/13 33/17 33/24
**continuing [3]** 17/1 22/10 27/7
**contours [1]** 22/1
**controversy [1]** 15/24
**correct [4]** 15/4 27/4 29/18 40/6
**correctly [1]** 29/2
**could [5]** 9/9 9/11 20/24 35/13 35/24
**counsel [8]** 3/7 3/20 3/23 4/6 23/15 29/2 38/5 38/13
**County [1]** 22/4
**courage [1]** 38/9
**course [2]** 4/25 38/25
**court [19]** 1/1 1/14 2/23 3/3 3/7 6/9 6/11 6/12 7/14 8/4 19/4 21/3 24/21 24/24 29/7 35/19 35/19 35/20 40/11
**Courthouse [1]** 2/23
**courtroom [1]** 38/4
**courts [1]** 38/24
**covenant [3]** 13/14 19/6 32/13
**covenants [2]** 20/14 20/16
**Cox [9]** 2/7 3/15 12/6 28/24 32/5 32/25 35/5 37/6 38/13
**Cox's [1]** 36/16
**created [3]** 7/24 31/21 34/21
**credit [2]** 29/14 29/19
**CRIA [12]** 22/8 23/3 24/16 24/18 24/22 25/9 26/11 33/16 33/19 33/19 33/20 33/20
**CRR [2]** 2/23 40/11
**culmination [1]** 12/14
**current [1]** 9/15 27/6
**currently [3]** 34/16 35/17 37/2
**cv [1]** 1/5

## D

**dangerous [1]** 25/5
**date [3]** 17/23 34/17 40/11

**D**

**day** [4]  9/13 16/2 20/20 34/20
**days** [4]  6/6 24/2 34/18
**DBSI** [1]  19/9
**deal** [4]  4/21 4/24 12/6 30/17
**debate** [1]  8/11
**decide** [2]  11/14 37/13
**decision** [14]  7/21 7/22 7/24 8/5 8/8 8/16
8/18 9/4 10/12 11/22 12/14 17/20 36/24
37/1
**defendant** [7]  22/6 24/15 24/25 25/2
33/24 34/4 34/5
**defendants** [8]  1/8 2/7 3/17 3/19 4/15
22/14 23/22 37/24
**defendants'** [5]  3/25 4/3 21/6 24/14 35/20
**deference** [1]  37/8
**demonstrates** [1]  23/7
**Dennis** [2]  2/23 40/10 40/11
**depend** [2]  16/23 18/14
**depends** [3]  5/22 15/25 20/6
**describes** [1]  6/15
**despite** [1]  22/6
**detail** [1]  11/6
**determination** [1]  20/23
**determined** [2]  19/23 19/25
**determines** [1]  9/23
**developing** [1]  18/20
**development** [2]  4/8 5/10
**developments** [2]  28/11 28/13
**did** [10]  5/1 5/25 14/5 15/6 21/18 21/20
26/23 29/9 29/11 30/1
**didn't** [1]  31/1
**differ** [1]  4/16
**different** [7]  7/7 8/7 10/17 11/9 12/16
30/17 31/2
**differently** [2]  6/16 13/1
**difficult** [1]  36/19
**digitally** [1]  40/8
**director** [1]  3/21
**disagreements** [1]  4/7
**discovery** [3]  33/4 35/9 37/10
**discussed** [1]  36/18
**discussing** [1]  33/23
**discussion** [2]  15/18 38/17
**dismiss** [4]  4/1 14/16 14/16 38/9
**dismissed** [2]  14/18 14/21
**dismissing** [1]  25/4
**displacement** [1]  22/5
**disproportionate** [1]  33/22
**dispute** [2]  16/23 38/22
**disputed** [1]  33/21
**disputes** [1]  38/25
**DISTRICT** [4]  1/1 1/2 1/14 2/23
**do** [29]  4/17 7/13 7/16 8/23 11/2 11/17
13/17 14/8 14/11 15/10 15/11 16/12 16/13
19/25 23/16 27/2 28/12 29/15 29/16 31/5
31/11 31/24 32/22 35/16 37/2 37/4 38/7
38/20 38/25
**doctrine** [7]  5/15 5/16 5/24 7/11 23/3
24/21 34/3
**does** [11]  6/23 7/10 8/25 9/3 9/13 10/13
23/4 29/24 30/2 34/16 35/23
**doesn't** [10]  5/11 7/10 12/15 13/7 15/5
17/19 18/10 20/4 20/7 30/15
**doing** [4]  13/16 15/9 29/20 32/21
**don't** [20]  5/15 7/7 10/24 12/12 13/20
14/15 15/2 15/11 15/21 16/17 17/18 18/23
19/24 20/5 20/7 28/7 28/15 32/24 35/25 36/19
37/23
**done** [3]  5/8 11/20 30/9
**draft** [1]  29/16
**drafted** [2]  26/2 26/2

**during** [5]  5/11 10/1 16/2 24/10 27/9

**E**

**each** [12]  5/22 25/9 27/17 33/12 33/13
37/6 37/14 37/17 37/18 38/18
**Eagle** [12]  19/5 20/9 21/1 24/2 24/16
25/23 25/25 30/10 30/22 31/8 31/12 34/8
**earlier** [1]  12/8
**effect** [1]  8/21
**either** [5]  13/25 14/2 16/6 35/5 38/18
**elect** [1]  9/6
**eligibility** [1]  36/12
**eligible** [7]  14/9 23/6 24/9 28/3 30/18 34/1
34/22
**ELIHPA** [5]  21/4 21/6 21/15 22/19 32/14
**else** [1]  36/14
**emergency** [1]  35/1
**encourage** [2]  37/5 37/14
**end** [4]  17/1 27/12 37/3 39/9
**enforced** [1]  23/5
**engaged** [1]  35/10
**enough** [2]  4/10 39/3
**ensure** [1]  31/17
**ensuring** [1]  35/23
**entitled** [2]  24/7 40/7
**essentially** [2]  8/21 15/24
**established** [1]  23/2
**establishes** [1]  19/9
**estimating** [1]  40/8
**et** [4]  1/4 1/7 3/6 3/6
**et al** [1]  3/6
**evaluate** [3]  7/6 7/9 24/21
**evaluation** [1]  37/11
**even** [19]  11/3 11/7 11/7 11/18 12/22 13/9
13/13 16/21 19/20 20/4 26/1 30/18 31/1
32/12 33/4 33/18 34/14 36/7 36/10
**ever** [2]  20/25 31/8
**every** [1]  25/9
**exactly** [2]  14/7 14/10
**Excellent** [1]  33/15
**Except** [1]  13/4
**exception** [6]  9/2 9/3 9/9 23/12 26/13
29/4
**exceptions** [4]  5/18 6/23 7/7 8/9
**exhausted** [1]  33/13
**exist** [5]  6/19 20/4 20/7 29/25 29/25
**existed** [2]  8/14 11/9
**existence** [2]  6/21 7/4
**exists** [1]  8/17
**expectation** [2]  23/8 25/1
**expire** [2]  9/13 16/25
**expired** [1]  25/12
**expires** [1]  9/17
**explained** [1]  12/19
**explore** [1]  38/20
**extremely** [1]  34/23

**F**

**face** [4]  14/3 22/5 23/25 34/11
**facial** [2]  13/3 25/16
**fact** [5]  18/19 20/6 20/11 22/6 30/20
**factors** [1]  16/23
**facts** [1]  18/15
**fail** [1]  14/25
**fair** [1]  18/7
**fairly** [2]  30/2 36/24
**familiar** [1]  7/19
**family** [1]  3/21
**far** [2]  27/13 36/12
**fault** [1]  11/12
**favor** [4]  10/12 11/23 21/6 21/16
**FCRR** [2]  2/23 40/11
**February** [2]  1/6 3/1

**few** [3]  30/14 32/7 38/8
**fide** [1]  9/25
**file** [2]  9/18 23/15
**filing** [2]  7/21 8/15
**final** [28]  7/23 12/10 12/23 14/22 14/23
15/13 16/12 16/18 16/20 17/5 17/12 17/20
17/22 18/8 18/11 18/15 20/4 20/6 20/24
21/2 22/15 30/12 30/13 30/15 30/21 30/24
36/12 36/24
**financing** [1]  35/14
**find** [3]  16/20 37/2 37/4
**finding** [1]  10/15
**findings** [1]  9/7
**fine** [11]  4/25 7/5 19/16 19/19 19/21 26/12
28/21 37/16 38/23 39/4 39/5
**first** [9]  4/19 6/5 14/18 20/16 25/21 26/3
26/4 28/8 30/7
**fiscal** [5]  24/10 27/6 27/13 27/15 27/21
**flaw** [1]  31/20 31/22
**flaws** [2]  4/19 4/22
**flip** [1]  19/24
**focus** [1]  35/22
**follow** [1]  35/8
**follow-up** [1]  35/8
**followed** [1]  6/11
**following** [4]  13/16 14/17 17/3 36/16
**footnote** [1]  31/14
**forcing** [1]  25/7
**foregoing** [1]  40/5
**form** [1]  5/22 33/19
**forms** [2]  18/1 18/2
**forward** [3]  4/2 35/21 37/10
**four** [2]  22/12 24/13
**fourth** [9]  4/23 14/18 22/17 25/16 25/22
30/16 30/20 30/25 31/6
**Francisco** [2]  2/4 38/12
**frankly** [1]  38/7
**frustrated** [2]  22/18 24/14
**frustration** [1]  33/25
**fuel** [1]  12/23
**full** [2]  7/2 34/22
**fully** [1]  27/5
**funding** [12]  16/6 22/23 24/10 27/6 27/10
27/12 28/9 31/13 31/16 31/17 34/12 34/14
**funds** [3]  27/8 27/25 34/9
**funny** [1]  27/1
**further** [3]  13/9 26/18 35/5
**future** [7]  15/23 16/1 16/9 17/23 18/11
20/13 23/16

**G**

**gaps** [1]  34/21
**gave** [4]  7/18 8/2 8/22 31/22
**General** [1]  3/23
**Geraghty** [1]  6/10
**get** [17]  13/13 15/1 15/18 20/11 20/12
20/14 31/17 32/4 33/13 36/1 36/24 37/1
37/12 37/18 37/20 37/23 38/1
**getting** [4]  13/18 15/2 21/8 28/17
**Gideon** [2]  2/3 3/13
**give** [8]  7/13 9/24 29/14 29/19 30/2 31/25
37/8 38/15
**gives** [1]  34/18
**go** [4]  9/16 15/17 28/10 35/9
**goes** [1]  6/16
**going** [30]  6/1 7/13 9/25 12/6 13/14 15/14
16/23 16/24 16/25 18/14 18/18 18/19
19/12 19/13 20/9 20/22 21/1 29/16 31/8
32/4 33/7 33/10 33/12 36/7 36/17 36/23
36/24 37/1 37/10 38/7
**Golden** [12]  19/5 20/9 21/1 24/2 24/16
25/23 25/25 30/10 30/22 31/8 31/12 34/8
**Golden Eagle** [1]  20/9

**G**

**good [6]**  3/9 3/12 3/18 21/24 21/25 36/20
**Government [13]**  4/18 5/24 8/13 28/8 29/3 29/5 29/9 29/10 29/11 29/21 30/1 30/21 35/18
**Government's [2]**  29/25 31/20
**grant [2]**  4/14 35/20
**granted [1]**  22/9
**granting [1]**  29/17
**Great [2]**  23/22 26/20
**guess [1]**  38/19

**H**

**had [7]**  7/20 8/4 9/8 10/15 26/8 27/8 31/15
**happen [4]**  16/1 16/3 34/7 35/13
**happens [5]**  5/9 5/11 7/3 9/17 9/19
**harm [6]**  28/19 28/20 32/10 32/15 32/20 32/21
**harmed [1]**  26/4
**harmful [1]**  8/21
**has [36]**  7/6 10/9 11/20 13/8 14/2 14/11 17/19 19/15 22/6 22/9 23/2 23/5 24/3 24/10 24/17 24/23 25/2 27/5 27/7 27/10 27/14 27/17 27/18 28/8 31/11 31/16 31/22 32/25 33/18 34/4 34/6 34/9 34/12 35/10 35/15 36/9
**hasn't [2]**  12/21 25/12
**have [49]**
**having [2]**  8/12 34/22
**he [3]**  6/18 32/10 35/10
**hear [1]**  11/10
**hearing [3]**  1/11 4/2 8/10
**heavy [2]**  24/25 29/5
**help [1]**  7/20
**here [16]**  3/25 7/21 19/25 29/3 29/5 29/8 29/9 30/12 31/9 33/16 34/4 38/10 38/13 38/15 38/24 39/2
**HILBURN [1]**  1/4
**him [1]**  32/14
**homeless [1]**  8/1
**homelessness [2]**  23/25 34/11
**Honor [41]**
**Honor's [2]**  15/6 21/13
**HONORABLE [1]**  1/13
**house [2]**  2/3 34/13
**housing [6]**  3/10 3/14 3/21 13/23 22/2 22/3
**how [4]**  4/7 14/11 18/6 37/10
**However [1]**  24/17
**hurt [2]**  18/6 18/7

**I**

**I'll [5]**  4/19 8/8 15/17 19/16 36/23
**I'm [18]**  7/12 7/14 8/10 11/11 14/1 16/14 17/3 19/24 20/2 23/13 26/21 28/19 33/6 33/12 35/9 36/22 36/24 38/7
**I've [2]**  15/19 36/22
**identified [1]**  12/9
**identify [3]**  3/8 11/12
**identifying [1]**  15/17
**ignore [1]**  33/24
**ii [14]**  19/5 20/9 21/1 21/14 24/2 24/16 25/23 25/25 26/11 30/10 30/22 31/9 31/12 34/8
**illegal [5]**  23/4 24/15 24/25 25/6 33/17
**illegally [2]**  20/15 20/21
**immaterial [1]**  17/24
**imminent [3]**  4/13 7/24 8/15
**imminently [1]**  22/25
**impact [10]**  4/22 10/11 10/15 22/7 23/9 24/21 29/10 29/23 30/9 33/23
**Impacts [1]**  29/12

**I**

**implementing [1]**  10/25
**implication [1]**  29/24
**implore [1]**  32/20
**important [6]**  21/3 21/7 29/7 35/11 36/1 38/2
**importantly [2]**  5/17 37/11
**imposition [1]**  20/16
**improper [1]**  11/16
**improperly [2]**  10/10 28/6
**inappropriate [1]**  12/23
**inclined [1]**  35/20
**including [2]**  7/8 22/14
**income [4]**  22/3 25/7 34/10 34/23
**incorrect [2]**  11/20 29/10
**increased [1]**  27/18
**increases [1]**  34/11
**indicated [1]**  12/6
**indication [1]**  11/19
**individual [7]**  22/10 23/25 24/8 24/11 34/10 34/15 34/24
**information [1]**  21/13
**initially [1]**  29/24
**initiation [1]**  24/19
**injunction [1]**  29/17
**injunctive [1]**  35/17
**injured [1]**  34/15
**injury [15]**  4/13 5/10 6/24 7/4 7/25 8/3 8/14 8/16 11/9 11/9 18/4 29/24 30/8 31/22 31/25
**instead [2]**  5/16 12/16
**instructed [1]**  15/9
**instructs [1]**  32/17
**interest [1]**  6/19
**interested [1]**  8/10
**interesting [5]**  18/7 21/18 36/19 36/21 38/2
**interpreting [1]**  10/25
**invalid [1]**  11/1
**invoked [1]**  20/21
**is [178]**
**isn't [5]**  5/5 10/20 16/20 17/13 18/18
**issue [8]**  4/8 16/22 19/21 28/1 31/14 32/9 33/16 33/22
**issued [2]**  28/15 30/23
**issues [4]**  15/19 36/18 37/11 38/2
**issuing [1]**  28/6
**it [87]**
**it is [1]**  17/15
**it's [6]**  10/14 13/21 14/10 16/11 17/13 29/6
**its [12]**  6/21 6/22 14/3 17/1 23/5 26/5 28/8 28/9 29/22 33/25 34/2 35/22
**itself [4]**  9/11 21/7 33/19 34/18

**J**

**James [2]**  2/7 3/15
**Jessica [2]**  2/3 3/10
**joined [1]**  3/20
**Jr [1]**  2/7
**JUDGE [22]**  1/14 12/9 13/8 13/10 13/20 15/4 17/7 17/14 17/21 18/12 18/23 19/8 19/18 20/3 20/8 20/19 21/1 21/17 21/20 32/7 32/23 33/8
**just [9]**  17/13 17/17 21/2 21/10 26/24 28/16 30/1 34/5 37/6
**justiciability [2]**  15/19 15/22
**justiciable [5]**  36/18 37/2 37/4 37/13 37/25

**K**

**key [1]**  29/5
**know [9]**  6/8 12/13 16/17 18/5 21/3 35/25 36/10 36/11 36/19

**K**

**Kohn [1]**  3/22

**L**

**lack [4]**  12/10 14/19 14/22 24/17
**laid [1]**  15/5
**Laidlaw [4]**  6/5 6/14 6/15 7/15
**language [5]**  6/10 6/12 13/22 21/3 33/20
**large [1]**  34/11
**largely [1]**  4/24
**last [3]**  24/2 27/8 27/15
**later [3]**  6/13 18/5 20/15
**law [4]**  2/3 6/17 13/5 14/13
**lawsuit [3]**  5/2 24/19 24/20
**lawsuits [1]**  23/15
**learned [1]**  24/9
**lease [1]**  17/1
**leases [1]**  16/24
**least [4]**  8/6 17/9 27/13 27/19
**leave [1]**  38/8
**leaves [1]**  19/7
**legal [1]**  12/15
**let [6]**  9/12 11/11 33/12 36/3 36/17 37/22
**lifted [1]**  20/15
**lifting [1]**  30/24
**light [1]**  32/14
**like [5]**  4/18 17/23 20/18 25/7 28/5
**likelihood [1]**  34/3
**likely [3]**  22/25 27/11 34/15
**LILY [1]**  1/4
**limitation [1]**  25/14
**limitations [6]**  12/24 13/1 13/8 14/4 15/13 25/12
**limited [2]**  35/15 35/22
**linear [1]**  15/12
**lines [1]**  23/10
**listen [2]**  19/16 19/20
**literally [1]**  15/9
**litigation [6]**  5/11 6/20 7/2 19/24 20/1 23/1
**little [9]**  6/12 6/14 6/15 19/24 22/13 22/21 35/9 36/23 38/17
**living [1]**  28/10
**loan [1]**  24/7
**local [1]**  25/7
**long [2]**  30/4 37/7
**longer [4]**  5/9 8/17 29/25 31/23
**look [4]**  4/2 5/15 9/18 13/21
**looked [1]**  35/15
**looking [3]**  7/20 14/6 32/16
**losing [1]**  7/25
**lot [1]**  15/25
**low [4]**  22/3 25/7 34/10 34/23
**low-income [4]**  22/3 25/7 34/10 34/23

**M**

**made [7]**  8/7 9/19 9/23 10/1 10/6 16/11 23/5
**main [1]**  12/7
**make [8]**  4/18 21/19 22/14 23/13 28/16 32/18 38/18
**makes [3]**  18/20 32/24 36/8
**making [2]**  32/15
**many [1]**  26/3
**March [1]**  40/10
**market [3]**  2/4 24/3 34/23
**Martin [9]**  2/7 3/19 4/22 11/5 28/25 32/6 35/6 35/8 38/13
**materials [1]**  4/2
**matter [1]**  36/6
**may [11]**  15/25 15/25 17/14 18/6 19/20 21/16 23/13 23/21 27/22 36/10 36/11
**maybe [4]**  11/11 26/10 38/14 38/16
**McFalls [1]**  3/5

**M**

me [20]  6/1 7/12 7/13 9/12 11/11 16/11 19/15 19/19 20/2 22/13 23/14 25/18 29/15 33/6 36/3 36/17 36/25 37/17 37/20 37/22
mean [5]  15/11 15/12 17/19 19/24 30/15
meaningfully [1]  37/15
means [2]  28/1
mentioned [4]  12/5 27/5 34/5 35/8
merits [12]  13/18 15/1 15/16 15/20 21/8 28/18 37/12 37/12 37/23 38/1 38/6 38/18
met [2]  25/2 34/4
method [1]  4/17
MICHAEL [1]  1/13
mid [1]  25/24
mid-2015 [1]  25/24
might [8]  7/19 10/3 18/5 20/11 20/12 20/14 20/14 35/14
million [7]  27/14 27/16 27/20 27/20 27/21 28/13 28/14
ministerial [5]  17/11 17/13 17/13 17/18 17/18
minute [1]  6/5
minutes [1]  38/8
mirrors [1]  21/5
miss [1]  14/5
mission [3]  22/18 24/13 33/25
misunderstanding [1]  23/14
moment [1]  23/24
Monahan [1]  6/17
money [1]  18/4
monitoring [1]  35/11
months [3]  30/14 36/9 36/13
moot [8]  8/7 8/19 8/25 14/2 19/15 23/4 26/14 30/7
mootness [21]  5/13 5/16 5/16 5/18 5/24 6/3 6/7 6/21 7/6 7/6 7/11 8/9 8/11 8/14 9/1 19/13 19/21 23/11 24/20 26/12 34/3
more [13]  11/5 11/10 19/17 19/21 21/6 21/16 22/21 26/19 27/3 29/12 29/12 36/23 37/11
morning [5]  3/9 3/12 3/18 21/24 21/25
most [3]  5/17 7/8 8/10
motion [14]  1/11 4/1 4/3 5/17 14/16 14/16 15/12 21/19 33/3 35/17 35/20 38/9 39/4 39/7
move [4]  15/21 18/23 22/5 28/12
moving [1]  35/21
Mr [2]  21/22 32/9
Mr. [20]  3/20 4/22 11/5 12/6 26/23 28/24 28/25 32/5 32/6 32/25 33/9 35/5 35/6 35/8 36/4 36/16 37/6 38/12 38/13 38/13
Mr. Anders [4]  26/23 33/9 36/4 38/12
Mr. Cox [7]  12/6 28/24 32/5 32/25 35/5 37/6 38/13
Mr. Cox's [1]  36/16
Mr. Martin [4]  4/22 11/5 28/25 32/6 35/6 35/8 38/13
Mr. Wes [1]  3/20
Ms [1]  36/4
Ms. [5]  3/22 9/6 21/22 33/9 38/11
Ms. Cassella [3]  21/22 33/9 38/11
Ms. Shiveley [1]  9/6
Ms. Zoey [1]  3/22
much [7]  12/13 21/15 28/13 28/22 29/12 29/12 38/7
multi [1]  3/21
multi-housing [1]  3/21
multifamily [1]  13/23
must [5]  6/19 6/20 14/18 14/21 24/21
my [7]  11/12 12/9 17/21 23/12 27/4 29/16 36/19

**N**

National [3]  2/3 3/10 3/14
nationwide [1]  25/8
necessary [1]  24/12
need [10]  16/9 27/19 28/4 28/7 28/12 28/15 34/6 34/25 35/14 35/15
never [2]  30/21 30/22
new [1]  29/22
news [1]  36/20
no [36]  5/9 8/17 9/18 9/23 10/1 10/5 10/8 10/17 10/19 11/16 11/17 11/19 13/25 14/22 14/25 16/1 16/10 16/14 17/4 17/8 18/10 22/15 24/3 25/1 26/19 26/24 27/2 29/24 30/8 30/14 31/7 31/23 34/7 34/9 35/17 36/25
no one [3]  10/17 10/19 36/25
Nobody [1]  33/6
non [1]  24/4
non-profit [1]  24/4
none [1]  22/8
nonprofits [1]  25/7
not [70]
noted [6]  19/2 23/2 24/2 24/6 24/18 24/23
nothing [1]  31/11
notice [2]  9/24 17/15
notifying [1]  17/9
notwithstanding [1]  8/25
November [1]  26/1
now [24]  4/14 5/5 5/8 7/12 8/5 8/7 8/19 8/23 11/21 15/12 15/17 16/21 19/1 19/15 24/17 26/10 28/17 31/4 35/10 35/18 37/23 33/4 38/10 38/18
nuanced [1]  36/18
number [3]  7/7 7/15 16/23

**O**

obligation [2]  17/19 19/6
obvious [3]  23/13 23/19 27/22
occur [4]  22/25 30/13 31/1 31/9
occurred [3]  11/21 29/8 29/9
occurring [1]  11/21
occurs [2]  20/25 31/10
October [3]  9/15 9/16 9/18
October 16th [1]  9/18
October 17th [1]  9/15 9/16
offer [5]  15/7 36/8 36/8 36/9 36/10
offered [1]  10/17
offers [9]  9/19 9/23 10/1 10/19 16/2 16/10 17/4 24/4 35/13
office [7]  2/8 3/16 3/22 3/22 4/8 35/16 38/16
Official [2]  6/12 40/11
okay [7]  8/8 11/24 18/22 19/19 21/12 23/19 26/16 26/17 28/18 28/21 30/23 33/9
old [2]  6/9 6/17
olden [1]  6/6
older [1]  13/1
once [3]  11/4 20/12 36/8
one [17]  4/5 5/3 5/12 5/21 6/4 6/7 10/17 10/19 14/24 16/4 26/24 27/3 30/1 32/4 35/7 35/8 36/25
only [9]  16/1 18/2 19/8 19/22 27/8 27/14 27/21 29/15 34/19
oOo [1]  40/3
Open [1]  3/3
opening [1]  21/19
operating [1]  27/7
operation [1]  18/13
opinion [2]  29/16 36/19
opportunity [5]  10/20 10/22 15/7 38/10 39/1
opposed [2]  18/1 19/3

opposite [2]  8/18 29/22
opposition [1]  9/1/15
option [1]  9/6
options [1]  9/9
oral [2]  3/5 39/5
order [1]  33/3
OREGON [3]  1/2 1/7 3/21
organization [1]  19/11
original [1]  40/8
other [11]  7/15 18/1 18/2 20/10 20/12 27/11 30/4 33/13 37/6 37/14 38/20
our [13]  12/8 12/13 13/20 14/7 15/4 15/22 19/2 20/19 20/24 21/14 28/8 28/11 33/3 30/4 34/12
out [15]  15/5 15/17 16/6 18/4 20/9 24/10 27/5 27/10 27/12 27/23 27/24 28/5 29/2 32/15 34/12
over [2]  12/10 28/9
owner [1]  24/6

**P**

page [2]  14/17 14/20
Parole [1]  6/10
part [1]  19/3
participate [1]  30/19
particular [1]  17/25
particularized [5]  4/13 5/10 6/24 7/4 8/3
parties [3]  37/5 37/14 38/21
partner [1]  12/2
past [2]  15/19 31/16
pay [1]  34/22
pendency [1]  5/11
pending [8]  35/18 38/8 39/3
people [5]  18/6 28/3 28/7 28/10 28/12
percent [1]  28/9
PERDUE [2]  1/7 3/6
perhaps [1]  7/3
period [6]  7/2 9/13 10/2 16/2 27/9 34/20
personal [1]  6/19
persuade [1]  15/15
phantom [1]  32/21
place [1]  20/17
places [1]  24/25
plainly [2]  13/15 32/17
plaintiff [7]  3/7 4/10 6/24 8/22 10/6 19/3 19/8
plaintiffs [41]
plaintiffs' [8]  4/5 4/23 11/23 20/15 20/22 25/13 29/22 29/24
pleading [1]  11/19
please [2]  3/8 22/14
point [25]  6/4 6/7 9/22 11/4 11/18 11/25 12/15 16/8 17/4 17/21 18/7 18/8 20/5 20/12 20/13 20/19 21/2 21/18 21/19 28/5 30/3 30/19 35/7 36/11 36/16
pointed [1]  29/2
points [2]  24/15 32/7
policy [1]  12/21
portion [1]  27/8
Portland [3]  1/7 2/9 2/24
position [3]  26/11 30/1 31/20
positions [1]  38/19
possibility [1]  18/11
possible [2]  35/12 35/13
possibly [1]  35/24
potential [2]  9/1 28/20
practices [2]  10/7 25/6
precedent [2]  24/24 25/5
preliminary [1]  29/17
prepaid [3]  13/13 14/10 20/11 20/13 32/12 32/19 34/9
prepay [1]  7/3
prepayment [30]  7/22 7/24 8/17 9/7 9/25 10/14 11/4 11/8 12/13 16/3 16/15 16/22

**P**

prepayment... [18] 18/11 19/5 20/8 20/16 21/1 23/6 23/17 25/22 25/23 25/25 26/3 30/13 31/3 31/9 33/1 34/1 34/18 34/19
prepayments [1] 34/20
presence [1] 23/6
present [1] 34/1
preservation [1] 22/3
pretty [1] 21/15
prevent [1] 24/11
primarily [1] 23/11
prior [1] 7/21
probably [2] 27/19 38/20
problem [8] 11/11 12/11 12/24 16/7 19/10 20/3 20/20 30/6
proceed [2] 23/21 37/10
proceedings [3] 1/12 39/9 40/6
process [9] 10/9 10/12 11/21 12/15 12/17 25/23 35/11 35/12 35/23
processed [1] 26/3
Professor [1] 6/17
profit [1] 24/4
program [23] 4/9 4/9 4/24 10/21 11/1 11/3 12/20 12/21 13/15 14/12 18/4 18/14 24/1 27/15 27/16 27/20 27/25 28/10 30/2 30/5 30/17 30/18 35/25
programs [1] 4/8
progresses [1] 5/8
Project [2] 2/3 3/10
prong [1] 18/9
proper [1] 24/20
properties [7] 20/11 20/12 23/7 23/16 32/12 32/19 34/1
property [8] 7/23 10/18 10/20 24/4 26/5 30/22 31/12 35/24
proposal [1] 37/20
proposals [1] 37/17
protective [1] 33/3
provide [4] 32/11 34/8 34/18 35/1
provided [1] 34/6
providing [1] 37/25
provision [1] 17/15
public [2] 14/13 24/4
published [1] 25/17
purchase [2] 24/4 36/9
purchaser [2] 36/8 36/8
purposes [1] 5/17
push [1] 37/20
push-back [1] 37/20
put [1] 23/20
puts [1] 34/12

**Q**

question [6] 5/1 8/23 18/18 23/12 30/14 32/3
questions [2] 26/19 36/12
quick [1] 32/7

**R**

raise [1] 4/15
ramifications [1] 12/16
ran [1] 16/6
RD [29] 3/21 4/24 13/10 13/16 14/7 14/11 15/9 17/15 20/10 20/21 23/5 24/7 24/9 24/9 24/18 25/5 25/25 26/3 26/4 27/5 28/6 32/11 32/17 32/21 33/17 34/12 34/16 34/18 34/21
RD's [6] 22/18 24/1 25/15 25/16 25/22 34/16
RDR [2] 2/23 40/11
reach [1] 38/21
reached [3] 7/20 8/18 29/22

read [2] 4/2 15/19
reading [1] 4/5
real [1] 4/7
realize [2] 9/18 29/7
really [16] 6/22 12/9 12/18 13/10 16/23 17/12 18/17 19/1 19/7 19/25 21/10 29/4 31/4 32/20 33/1 37/23
reason [7] 4/16 9/5 10/5 10/17 31/10 32/24 35/19
reasonable [2] 23/8 25/1
reasons [3] 15/16 26/13 31/19
receive [1] 23/16
received [1] 16/2
receiving [1] 24/12
recently [1] 24/9
recommend [1] 37/18
record [6] 3/8 18/18 21/17 23/20 27/23 40/6
recurrence [1] 34/3
redressability [2] 6/25 7/5
redressable [1] 8/4
reference [1] 32/10
referenced [1] 14/13
referring [2] 6/8 6/9
regarding [3] 24/24 31/2 37/6
regulation [7] 13/1 10/21 21/2 21/5 21/15 22/19 31/8
regulations [16] 10/25 23/4 23/6 23/17 24/15 25/6 25/11 25/15 25/22 25/24 26/2 26/5 26/8 33/17 33/21 33/25
regulatory [1] 25/10
rejecting [1] 14/1
relevance [1] 17/20
relevant [2] 6/22 7/8
relied [1] 25/24
relief [19] 4/13 4/20 4/23 5/4 5/22 5/23 14/21 18/2 22/8 22/11 22/12 30/7 30/17 30/21 30/25 31/7 31/11 32/1 35/18
relies [2] 25/4 25/9
rely [2] 25/6 33/21
relying [1] 7/14
remedied [1] 31/23
removed [1] 20/18
renew [3] 28/2 28/3 33/3
renewal [3] 13/5 13/7 28/4
rent [2] 34/11 34/23
rental [3] 4/9 7/25 35/1
repeat [1] 33/14
repeated [3] 23/8 25/2 29/6
repeating [1] 35/10
reply [1] 19/2
REPORTER [2] 2/23 40/11
requested [1] 5/23
requests [1] 26/3
required [1] 17/15
requirements [2] 6/25 8/24
requisite [1] 6/19
reset [1] 12/17
residents [16] 13/12 14/9 16/24 17/9 17/25 19/4 28/2 28/20 32/12 32/18 34/7 34/8 34/17 34/19 34/22 34/23
residing [1] 14/9
resolution [1] 27/7
resolve [3] 15/14 38/21 38/24
resolved [1] 36/7
resources [4] 25/9 35/1 35/16 35/22
respect [7] 10/11 11/20 22/15 28/5 30/16 30/22 31/13
respective [2] 38/6 38/19
respond [3] 15/7 33/11 33/13
response [2] 34/25 35/5
responses [1] 37/25
responsibility [1] 11/13

restricted [1] 13/14
restriction [3] 22/20 24/7 30/24
restrictions [5] 26/1 28/11 30/23 31/10 34/9
restrictive [4] 19/6 20/14 21/6 32/13
result [1] 35/24
resulted [1] 10/15
retroactive [1] 34/20
reverse [1] 9/11
Review [1] 6/17
reviewable [1] 17/6
revised [4] 24/16 24/22 33/18 33/20
right [25] 3/25 6/6 7/5 15/12 15/17 16/3 16/5 16/20 17/14 17/21 18/18 18/25 21/9 26/11 26/22 28/18 35/10 35/18 35/23 36/1 36/3 36/16 37/23 38/4 38/17
rights [8] 4/21 10/11 10/14 22/7 29/10 29/12 29/23 30/9
ripe [3] 11/4 11/18 19/20
ripeness [5] 11/7 12/10 15/13 19/17 20/18
risk [2] 22/4 34/13
RMR [1] 40/11
robust [1] 29/12
room [2] 2/24 38/15
rude [1] 19/24
rule [2] 20/23 36/17
run [6] 10/9 24/10 27/5 27/10 27/12 34/12
running [1] 4/8 27/24
Rural [1] 4/7

**S**

safe [1] 23/20
said [9] 6/18 27/1 27/2 30/23 34/6 35/10 37/6 37/22 39/3
sale [3] 10/9 11/21 35/12
San [2] 2/4 38/12
San Francisco [1] 38/12
satisfy [1] 8/24
saw [1] 29/16
say [15] 5/21 6/7 8/8 17/8 17/23 20/20 21/10 24/17 26/18 26/23 27/2 27/3 35/12 36/5 36/17
saying [1] 16/14
says [1] 6/14
schedule [3] 37/7 37/9 37/16
Sean [2] 2/7 3/19
second [15] 4/1 4/5 4/20 4/20 8/5 10/6 10/8 12/8 14/14 14/20 14/20 22/9 25/21 32/1 33/24
Secondly [1] 32/23
see [5] 8/8 14/15 14/16 27/14 37/15
seek [2] 22/11 22/12
send [1] 37/17
sense [2] 18/21 32/24
separate [2] 4/18 37/17
seriously [2] 17/16 17/19
service [3] 23/7 26/5 34/2
set [4] 3/4 12/17 13/15 25/4
settled [3] 9/4 10/8 31/24
several [2] 16/9 26/2
she [1] 9/8
Shiveley [1] 9/6
shortages [1] 31/16
should [4] 8/11 11/13 38/14 38/17
show [5] 8/24 20/2 25/1 29/6 30/8
showed [1] 13/5
shown [1] 4/12
shy [1] 26/21
SI [2] 1/5 3/5
side [1] 33/12
sides [5] 37/7 37/8 38/10 39/5 39/6
sides' [1] 15/20

**S**

signature [3]  40/8 40/8 40/9
signed [1]  40/9
signing [1]  40/5
SIMON [1]  1/13
simply [4]  13/4 13/6 13/16 15/23
since [1]  12/22 22/2 36/25 39/1
situation [2]  16/4 35/2
six [3]  38/14 38/17 39/1
slightly [2]  4/16 21/5
slowly [1]  22/21
small [1]  25/7
so [37]  6/22 6/23 11/14 12/5 12/18 12/22
13/20 14/10 14/12 16/10 16/17 18/5 18/17
19/7 20/18 21/14 23/24 24/8 24/20 25/4
25/13 25/21 26/1 26/7 27/13 27/18 28/13
29/23 31/10 31/19 32/19 33/6 33/15 34/8
34/21 36/9 37/13
some [10]  5/10 7/13 16/7 17/23 20/11
20/13 20/20 36/22 37/24 38/14
somehow [1]  13/11
someone [1]  17/11
something [10]  5/9 7/3 13/6 14/5 16/13
17/18 23/14 26/23 27/4 36/5
somewhere [1]  27/19
SONNY [1]  1/7
soon [1]  36/24
sophisticated [1]  38/5
Sorry [1]  22/22
sort [1]  16/7
sought [1]  22/8
speak [1]  34/2
specific [4]  4/15 11/3 21/19
specifically [3]  7/17 24/23 33/22
specifics [1]  18/15
specified [1]  15/5
speculative [1]  16/8
spell [1]  27/23
spend [5]  23/24 25/8 27/8 36/23 38/14
spent [4]  27/16 27/17 28/14 36/22
stability [2]  22/2 34/13
stage [3]  9/11 10/12 38/7
standard [1]  25/10
standards [3]  24/15 33/17 33/23
standing [39]  4/10 4/14 4/17 5/2 5/5 5/7
5/8 5/12 5/15 5/15 5/21 6/2 6/4 6/7 6/20
6/25 7/8 7/18 8/4 8/19 8/23 10/4 13/25
14/1 14/20 14/23 15/13 19/10 19/13 19/14
19/22 19/25 20/5 23/1 24/17 24/20 26/8
31/5 31/22
standing/ripeness [1]  15/13
state [4]  14/25 15/8 21/16 35/16
STATES [3]  1/1 1/14 2/23
statute [9]  12/24 12/25 13/7 14/3 14/7
15/13 21/7 25/12 25/14
statutory [1]  32/16
stay [1]  15/17
staying [1]  35/24
step [7]  9/4 10/8 17/9 30/1 31/23 31/24
34/25
steps [2]  16/9 31/17
still [12]  8/25 10/20 16/11 17/24 22/4 22/5
22/10 23/5 23/25 29/19 33/20 34/4
stipulate [1]  37/15
stop [2]  7/2 13/7
Street [1]  2/4
subject [1]  25/25
subjects [1]  34/21
subsidy [1]  18/2
such [3]  5/9 16/25 18/3
suggest [1]  37/22
suggests [1]  20/13

Suite [2]  2/4 2/8
Supreme [5]  6/9 9/11 6/12 9/1 4 24/23
sure [7]  22/17 23/13 25/13 25/21 28/16
35/25 38/18
suspect [1]  36/11
SW [2]  2/8 2/24

**T**

table [1]  3/20
tag [1]  12/2
take [4]  11/12 20/5 32/8 39/3
taken [2]  9/8 31/16
takes [2]  17/15 17/18
taking [2]  38/8 39/1
talk [7]  6/1 7/18 11/5 19/12 19/13 25/18
37/18
talked [1]  23/23
talking [6]  6/23 13/2 19/22 23/11 28/17
28/19
team [1]  17/22
telephone [1]  37/18
tell [4]  7/12 19/15 19/19 22/13
telling [2]  6/1 16/11
tenants [9]  9/24 10/3 10/13 22/4 22/4
25/8 31/5 31/6 31/17
tenants' [1]  21/16
tentatively [1]  29/17
term [2]  17/2 30/12
termination [2]  22/20 22/23
terms [1]  20/23
than [3]  11/9 21/6 38/7
Thank [15]  4/4 12/4 21/20 21/21 26/22
28/21 28/23 29/1 32/5 33/8 35/3 35/4 36/2
36/14 39/8
that [246]
that's [30]  4/25 5/14 6/14 7/5 7/10 8/4
9/15 12/18 12/20 14/10 14/11 14/13 15/1
15/14 17/6 18/7 18/13 19/1 19/21 19/23
20/9 20/20 20/22 21/14 24/12 28/18 28/21
36/20 37/16 38/24
their [16]  4/6 4/11 5/3 5/23 10/6 11/3 11/5
14/3 22/9 30/7 31/15 31/18 32/1 32/11
34/13 38/13
them [10]  4/14 8/2 8/22 25/19 26/9 26/10
28/7 29/14 31/25 36/20
then [23]  5/11 5/14 5/25 6/1 6/11 7/3 7/6
7/13 8/5 8/8 9/10 9/19 9/23 11/22 14/23
16/3 16/21 26/12 27/2 30/23 37/3 37/4
37/16
theoretically [1]  20/5
there [62]
thereafter [1]  30/3
Therefore [2]  22/10 31/24
these [9]  16/4 23/4 23/17 25/6 31/19
33/25 34/21 34/23 35/16
they [14]  5/2 8/4 10/24 11/2 14/19 14/24
15/15 16/13 16/25 18/6 20/13 28/1 28/12
32/13
thing [7]  4/5 19/22 26/24 27/3 27/11 35/8
35/23
things [5]  11/15 18/14 26/16 30/11 34/8
think [24]  5/14 6/8 7/8 7/17 7/19 8/6
11/25 13/5 13/20 15/2 17/14 17/15 17/23
18/8 19/17 19/20 19/25 20/2 20/3 21/2
23/12 29/7 32/24 39/1
third [11]  2/8 2/24 4/23 12/19 13/9 14/21
14/24 22/11 23/23 23/24 30/16
this [63]
thorough [1]  29/12
those [14]  4/21 9/8 11/6 11/6 14/24 20/11
20/12 23/10 24/12 26/7 28/12 28/13 30/24
32/18
though [4]  19/13 26/1 27/1 33/18

thought [6]  12/5 13/24 14/23 23/19 23/20
22/23
threatening [1]  8/22
three [2]  14/17 25/14
threshold [1]  5/1
thrice [1]  20/18
through [2]  6/21 6/22
Tillamook [1]  22/4
time [25]  3/4 6/4 6/8 7/1 8/15 9/22 10/2
10/3 11/4 11/19 12/1 14/19 24/8 25/8 26/9
26/10 26/19 27/9 30/19 32/8 36/22 36/23
37/14 38/14 39/2
timely [2]  18/3 26/9
today [1]  25/4
together [3]  38/11 39/2
told [5]  13/17 14/8 14/8 29/15 32/22
took [2]  30/21 31/21
tossing [1]  30/11
tracking [1]  14/7
tracks [1]  21/15
transcript [3]  1/12 40/6 40/7
try [3]  15/15 20/2 36/23
turn [1]  26/12
two [3]  23/6 30/7 34/1

**U**

U.S [3]  2/8 3/19 6/10
U.S. [2]  3/16 38/16
U.S. Attorney's Office [2]  3/16 38/16
U.S.C [1]  21/14
ultimately [1]  6/16
under [21]  7/6 7/11 9/1 11/1 13/11 19/6
20/14 22/11 22/12 22/17 23/2 23/17 23/24
24/13 27/6 27/7 29/3 32/11 38/9 39/4 39/7
undermine [1]  7/3
understand [6]  9/12 26/16 28/16 38/6
38/11 38/19
understanding [2]  11/14 38/5
UNITED [3]  1/1 1/14 2/23
unlawful [1]  25/11
unless [2]  28/12 36/4
unripeness [1]  11/6
until [8]  11/13 16/18 18/5 32/25 33/13
34/17 36/12 36/25
up [6]  10/13 13/15 32/9 35/8 36/16 38/12
upon [4]  25/6 25/10 25/24 33/21
urge [1]  38/25
USDA [1]  3/22
use [14]  13/14 19/6 20/14 22/20 22/23
24/7 24/21 26/1 28/11 30/23 30/24 31/9
34/9 38/10

**V**

vacated [1]  12/13
valuable [1]  25/8
various [1]  6/23
versus [2]  3/6 13/2
very [16]  11/8 12/13 13/15 21/7 27/11
28/21 30/4 32/17 34/10 34/11 34/15 35/11
35/12 35/24 38/1 38/4
viability [1]  33/1
viable [3]  13/21 13/25 15/8
view [9]  12/9 12/13 13/20 14/7 20/15
20/19 20/22 20/24 21/14
violated [1]  22/19
violation [3]  15/1 21/4 32/14
violative [1]  14/3
voluntarily [1]  8/21
voluntary [11]  7/9 7/10 8/10 9/1 9/9 23/3
23/11 24/24 26/13 29/3 34/2
voucher [28]  4/9 4/24 10/21 11/1 12/7
12/20 13/22 14/12 15/23 16/5 16/6 16/22
18/14 18/20 22/23 24/1 24/10 27/5 27/10

**V**

**voucher... [9]** 27/15 27/16 27/20 27/25 28/4 28/10 34/12 34/14 34/22
**voucher-based [1]** 15/23
**voucher-eligible [1]** 34/22
**vouchers [25]** 12/5 13/13 14/9 18/1 24/9 24/12 27/18 28/2 28/2 28/3 28/3 28/7 28/12 28/14 31/14 31/18 32/12 32/18 34/6 34/8 34/10 34/16 34/17 34/19 36/12

**W**

**wait [7]** 6/5 11/13 27/1 33/6 33/7 36/25 37/1
**waiting [2]** 32/3 32/25
**want [20]** 7/12 11/10 12/3 12/12 15/6 15/15 18/1 19/15 19/19 23/13 26/19 26/23 27/2 27/4 29/15 33/3 35/8 36/5 37/23 38/15
**wanted [1]** 16/5
**was [23]** 6/10 7/22 8/3 8/22 10/12 11/22 11/22 13/24 14/23 16/6 21/4 22/25 23/1 23/19 23/20 24/6 26/4 26/9 29/23 30/9 31/2 31/20 32/22
**way [6]** 16/25 18/3 18/3 18/17 25/19 30/8
**we [57]**
**we're [5]** 13/2 15/14 23/10 28/17 30/3
**we've [1]** 8/7
**welcome [2]** 3/24 20/1
**well [12]** 6/3 6/14 14/6 15/11 17/7 19/17 24/2 26/11 34/5 34/25 37/2 38/23
**went [2]** 29/11 29/21
**were [7]** 7/17 9/23 10/1 12/22 26/2 29/16 33/5
**Wes [1]** 3/20
**what [29]** 7/18 8/6 8/10 9/17 9/19 11/20 11/21 12/7 13/16 13/16 14/7 14/11 15/9 15/14 16/13 17/12 25/19 27/24 28/17 29/7 29/8 32/10 32/21 32/24 35/10 35/13 37/5 37/17 38/24
**when [18]** 5/2 6/7 7/9 9/13 13/4 13/6 13/13 14/10 15/18 20/7 20/25 21/14 22/23 23/1 26/4 31/15 37/12 38/1
**whenever [1]** 12/3
**where [4]** 6/18 11/15 16/4 20/2
**whether [10]** 8/9 15/23 15/24 16/18 16/22 17/22 18/6 18/10 36/20 37/10
**which [16]** 8/18 12/21 16/3 22/19 23/23 24/11 29/14 30/17 30/18 32/13 32/17 34/4 34/23 35/11 35/24 36/10
**who [9]** 3/20 3/22 14/9 16/24 28/2 28/3 28/7 28/10 38/5
**who'd [1]** 18/1
**why [5]** 5/25 8/4 15/21 18/23 25/12
**will [29]** 4/22 7/6 8/8 9/24 11/10 15/18 17/5 23/8 23/9 23/15 24/8 25/2 27/12 27/19 29/6 30/13 34/11 34/24 34/25 35/13 36/11 37/1 37/3 37/8 37/20 38/1 38/2 38/15 39/3
**win [1]** 15/16
**wind [1]** 10/13
**within [4]** 23/7 26/5 34/1 35/16
**without [3]** 24/7 31/9 40/7
**won't [3]** 16/25 19/5 19/22
**word [4]** 13/6 13/6 21/15 21/15
**word-for-word [1]** 13/6
**would [42]**
**wrong [13]** 5/19 7/12 15/3 20/2 23/8 25/2 29/6 29/8 29/8 29/8 29/23 30/2 33/15

**Y**

**year [9]** 9/14 24/10 27/6 27/9 27/13 27/15 27/15 27/17 27/21

**yearly [1]** 25/16
**years [2]** 26/2 26/4
**Yes [5]** 5/3 9/21 23/18 26/15 28/1
**yet [4]** 16/17 20/4 20/7 22/15
**you [95]**
**you're [7]** 7/13 15/16 16/11 20/1 26/7 28/17 32/4
**you've [1]** 26/14
**your [59]**
**Your Honor [33]** 3/4 3/9 3/18 4/4 4/19 5/20 5/23 7/16 7/19 8/13 9/3 9/5 10/5 10/23 11/2 11/16 11/25 12/4 23/2 23/18 26/25 30/11 30/20 31/7 31/13 31/19 32/15 33/2 33/10 35/7 35/7 36/1 36/6
**Your Honor's [2]** 15/6 21/13
**yourselves [2]** 3/8 33/14

**Z**

**Zoey [1]** 3/22