IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LISA McFALLS, MICHAEL McFALLS, FRED WOODRING, and COMMUNITY ACTION RESOURCE ENTERPRISES, INC.**, <br><br>         Plaintiffs, <br><br>     v. <br><br>**THOMAS J. VILSACK, Secretary of the Department of Agriculture; JUSTIN MAXSON, Deputy Undersecretary for Rural Development; JOAQUIN ALTORO, Administrator of the Rural Housing Service; and MARGARET HOFFMANN, Oregon Rural Development State Director**, <br><br>         Defendants. | Case No. 3:16-cv-2116-SI <br><br> **OPINION AND ORDER** |

Gideon A. Anders, NATIONAL HOUSING LAW PROJECT, 1663 Mission Street, Suite 460, San Francisco, CA 94103; and Michael Pijanowski, Edward Johnson, and Kathryn McNeill, OREGON LAW CENTER, 230 NE Second Avenue, Suite F, Hillsboro, OR 97124. Of Attorneys for Plaintiffs.

Scott Erik Asphaug, Unites States Attorney; Sean E. Martin and Joshua Keller, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF OREGON, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for Defendants.

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

Plaintiffs Lisa McFalls, Michael McFalls, Fred Woodring, and Community Action Resource Enterprises, Inc. (CARE) (collectively, Plaintiffs) bring an as-applied challenge to the decision made by the United States Department of Agriculture Rural Development (Rural Development) to approve prepayment of the Section 515 loan for Golden Eagle II (Golden Eagle), a low-income housing development in Tillamook, Oregon.[1] Plaintiffs allege that: (1) Defendants violated the Administrative Procedures Act (APA) by implementing regulations inconsistent with the governing statute with respect to analyzing the effect of prepayment on minorities; (2) Rural Development violated the APA by failing to establish standards for determining the effect of prepayment on minorities; (3) Rural Development violated the APA by administering its voucher program in an arbitrary and capricious manner; and (4) Rural Development's regulations authorizing the termination of use restrictions violates the Emergency Low Income Housing Preservation Act. Defendants move to dismiss, arguing that Plaintiffs' claims are moot because a new owner has purchased Golden Eagle and does not seek prepayment of the Section 515 loan. For the reasons discussed below, the Court grants Defendants' motion.

## STANDARDS

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting

---

[1] At the time of filing, Plaintiffs named Sonny Perdue, Roger Glendenning, Rich Davis, and John E. Huffman as Defendants. Under Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Defendants Thomas J. Vilsack, Justin Maxson, Joaquin Altoro, and Margaret Hoffmann.

jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039)). When a defendant factually challenges a plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Robinson*, 586 F.3d at 685; *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite

their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted).

## BACKGROUND

Golden Eagle is a federally subsidized low-income housing development. Its continued designation as low-income housing, however, depends on whether its owner has paid the government loan that provided funding for that development. Government loans made under the Housing Act of 1949 (Housing Act) and its implementing regulations provide borrowers with low interest rates and decades-long repayment terms, while restricting the developments for use as subsidized low-income housing for the length of the loans.[2] Borrowers may apply for prepayment of the loan, which, if approved, allow the borrower to operate the housing development at the market rate and not as low-income housing. Before approving a prepayment application, however, the Housing Act and its implementing regulations require that Rural Development first conduct a "civil rights impact analysis" to determine whether prepayment would adversely affect housing for minorities.

In September 2016, Rural Development approved a prepayment application from Golden Eagle's owner. Plaintiffs filed this lawsuit the following month and moved for a preliminary injunction, challenging Rural Development's decision to approve Golden Eagle's prepayment. Shortly before the preliminary injunction hearing, Rural Development rescinded its approval of prepayment of the Golden Eagle loan and represented that it would conduct a second civil rights impact analysis before reconsidering the prepayment application. Based on Rural Development's changed position, the Court denied Plaintiffs' motion for preliminary injunction without

---

[2] The Court previously described the statutory and regulatory background of this case at *McFalls v. Purdue*, 2018 WL 785866, at *4-7 (D. Or. Feb. 8, 2018). The terms used here have the same meaning as used in the Court's earlier Opinion and Order.

prejudice. Rural Development's second impact analysis concluded that prepayment would have a disproportionate effect on housing options for minorities. Rural Development then required Golden Eagle's owner to offer Golden Eagle for sale to a nonprofit or public agency.

In July 2017, Plaintiffs filed their Second Amended Complaint (ECF 49), which is the operative pleading. Shortly thereafter, Defendants moved to dismiss that complaint, arguing that Plaintiffs claims were moot because Rural Development had rescinded its prior prepayment approval. The Court denied Defendants' motion, explaining that the voluntary cessation exception to mootness applied. ECF 67. In April 2019, Plaintiffs moved for summary judgment on their first and fourth claims. ECF 79. The Court stayed briefing on Plaintiffs' motion pending resolution of a motion to compel. ECF 81.

The parties filed a joint status report in March 2020, informing the Court that Northwest Coastal Housing (Northwest Coastal) had signed an agreement to purchase Golden Eagle and assume the existing government loan. ECF 109. Based on the pending negotiations for the purchase of Golden Eagle, the Court entered a stay on March 17, 2020. ECF 111. On December 28, 2021, Northwest Coastal completed its purchase of Golden Eagle. Northwest Coastal assumed the existing Section 515 loan with new rates and terms and received additional Section 515 financing from Rural Development. The two loans will mature in 2051. Northwest Coastal also agreed to record a restrictive covenant against the property requiring Northwest Coastal and any of its successors in interest to use Golden Eagle in compliance with Section 515 and related statutes and regulations and for the purpose of housing low-income individuals through 2051. This restrictive covenant runs with the land and will remain in effect upon foreclosure or transfer of title.

On February 25, 2022, Defendants filed a new motion to dismiss Plaintiffs' claims for lack of subject matter jurisdiction. That motion has been fully briefed. The Court heard oral argument on May 10, 2022, after providing the parties with a tentative opinion and order.

## DISCUSSION

Defendants contend that the sale of Golden Eagle to Northwest Coastal renders Plaintiffs' claims moot. Defendants argue that there is no longer a live controversy because Golden Eagle will remain subject to Section 515 restrictions after its sale to Northwest Coastal. Plaintiffs respond that the voluntary cessation exception to mootness applies and that their claims are not moot because Northwest Coastal may seek prepayment or borrowers for other Section 515 housing developments in Tillamook County may seek prepayment.

These arguments raise factual challenges to the Court's jurisdiction under Rule 12(b)(1). Thus, the Court considers documents and evidence outside the pleadings. *See Robinson*, 586 F.3d at 685 (stating that in a 12(b)(1) motion "[a] district court may hear evidence regarding jurisdiction and resolve factual disputes where necessary" (simplified)); *Farr v. United States*, 990 F.2d 451, 454 (9th Cir. 1993) (stating that "it *is* proper for the district court to consider evidence outside of the pleadings for the purpose of deciding a jurisdictional issue (emphasis in original)); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.").

"The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011). "A case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally

cognizable interest in the outcome' of the litigation." *Id.* (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "A moot case cannot be revived by alleged future harm that is 'so remote and speculative that there is no tangible prejudice to the *existing interests* of the parties.'" *Doe No. 1 v. Reed*, 697 F.3d 1235 (9th Cir. 2012) (emphasis in original) (quoting *Feldman v. Bomar*, 518 F.3d 637, 643 (9th Cir. 2008)); *see also Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007) (concluding that the federal agency's decision to list a killer whale population as an endangered species mooted the plaintiff's claims challenging the agency's endangered species listing policy and stating: "That the DPS Policy *might* adversely affect the Southern Resident's endangered species status or the Service's listing determination of certain *other* killer whale populations at some indeterminate time in the future is too remote and too speculative a consideration to save this case from mootness" (emphasis in original)).

After the sale of Golden Eagle to Northwest Coastal, Plaintiffs' claims became moot. Each of Plaintiffs' claims challenge Rural Development's actions and policies related to prepayment applications. There is no pending application for prepayment of the Golden Eagle loan, and Northwest Coastal has not indicated that it plans to file one. Indeed, Northwest Coastal recorded a restrictive convent ensuring that Golden Eagle would operate as a low-income housing development under Section 515 until 2051. Plaintiffs' claims therefore lack a live controversy for the Court to resolve.

Plaintiffs argue that the claims asserted by Plaintiff CARE are not moot because it has an interest in the availability of low-income housing and other Section 515 borrowers in Tillamook County might someday apply for prepayment.[3] Only Golden Eagle, however, is at issue in this

---

[3] At oral argument, Plaintiffs conceded that the claims of individual Plaintiffs Lisa McFalls, Michael McFalls, and Fred Woodring are moot.

case. Plaintiffs do not assert any claim against Defendants with respect to any action related to any other housing development or other Section 515 borrowers in Tillamook County. Plaintiffs also argue that if the Court rules that CARE's claims are moot, CARE will have to file a new lawsuit if Rural Development approves prepayment for some other development in Tillamook County. Plaintiffs are correct. The burden of filing a new complaint on a new set of facts, however, does not create a live controversy in this case. Further, under Plaintiffs' theory, even if Golden Eagle were subject to a restrictive covenant prohibiting its owner from applying for prepayment, Plaintiff CARE would still have a live claim based on the possibility that borrowers for other developments not currently before the Court might someday apply for prepayment. Proceeding on those facts would call for an impermissible advisory opinion by this federal court.

Plaintiffs also argue that application of the voluntary cessation exception to mootness is the law of this case and that Defendants must therefore meet the heightened mootness standard under that exception. Plaintiffs misunderstand the law of the case doctrine. The fact that the Court previously ruled that Rural Development's rescission of the prepayment approval constituted voluntary cessation does not mean that any subsequent factual development that moots Plaintiffs' claims also constitutes voluntary cessation. In the Court's prior Opinion and Order, the Court concluded that the voluntary exception to mootness applied because Rural Development ceased the challenged conduct—its approval of the prepayment application for Golden Eagle. Here, Defendants have not merely ceased the challenged conduct. Instead, the reason Plaintiffs' claims are moot is because a non-party has purchased Golden Eagle and assumed the Section 515 loan. Thus, the Court grants Defendants' motion to dismiss Plaintiffs' claims without prejudice.

PAGE 8 – OPINION AND ORDER

## CONCLUSION

The Court GRANTS Defendants' motion to dismiss without prejudice. ECF 128.

**IT IS SO ORDERED**.

DATED this 11th day of May, 2022.

                                              */s/ Michael H. Simon*
                                              Michael H. Simon
                                              United States District Judge