```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF OREGON

 3   LISA MCFALLS, MICHAEL MCFALLS,)
     FRED WOODRING, and COMMUNITY  )
 4   ACTION RESOURCE ENTERPRISES,  )
     INC.,                         )
 5                                 )
              Plaintiffs,          )   Case No. 3:16-cv-2116-SI
 6                                 )
         v.                        )
 7                                 )
     THOMAS J. VILSACK, Secretary  )   May 10, 2022
 8   of the Department of          )
     Agriculture, et al.,          )
 9                                 )
              Defendants.          )   Portland, Oregon
10   _____)
```

11

12

13

14

15                          **Motion Hearing**

16                      (By Videoconference)

17                  TRANSCRIPT OF PROCEEDINGS

18          BEFORE THE HONORABLE MICHAEL H. SIMON

19          UNITED STATES DISTRICT COURT JUDGE

20

21

22

23

24

25

```
 1
 2                            APPEARANCES
 3

 4   FOR THE PLAINTIFFS:     Mr. Gideon A. Anders
                             National Housing Law Project
 5                           703 Market Street, Suite 2000
                             San Francisco, CA
 6

 7                           Mr. Edward Johnson
                             Oregon Law Center
 8                           State Support Unit
                             522 S.W. Fifth Avenue, No. 812
 9                           Portland, OR 97204

10

11                           Mr. Michael A. Pijanowski
                             Legal Aid Services of Oregon
12                           230 N.E. Second Avenue, Suite F
                             Hillsboro, OR 97124
13

14

15   FOR THE DEFENDANTS:     Mr. Sean E. Martin
                             Mr. Joshua Keller (by telephone)
16                           United States Attorney's Office
                             District of Oregon
17                           1000 S.W. Third Avenue, Suite 600
                             Portland, OR 97204
18

19

20

21   COURT REPORTER:         Bonita J. Shumway, CSR, RMR, CRR
                             United States District Courthouse
22                           1000 S.W. Third Avenue, Room 301
                             Portland, OR 97204
23                           (503)326-8188
                             bonita_shumway@ord.uscourts.gov
24

25
```

(P R O C E E D I N G S)

(May 10, 2022; 3:01 p.m.)

* * * * *

THE COURT:  Good afternoon, everyone.  This is Judge Simon.  We are here in the case of Lisa McFalls, et al. versus Secretary Thomas J. Vilsack, et al., Case No. 3:16-cv-2116.  We are here for argument on defendants' motion to dismiss, Docket 128.

And I'll invite first counsel for plaintiffs to enter your appearance by video.

MR. ANDERS:  Judge Simon, my apologies, but for some reason my video is not showing up.

THE COURT:  All right.  Well, that sounds like Mr. Anders.  Am I correct, sir?

MR. ANDERS:  It is Mr. Anders, yes, sir.

THE COURT:  Okay.  You can either try to reconnect or we'll just hear you by audio, whatever you prefer.

MR. ANDERS:  Well, I wouldn't mind being seen, but I don't know --

THE COURT:  If you want, I'll be glad to wait if you want to disconnect and try connecting back in if you wish.  That's fine with me.  I think it's better to be heard and not seen than seen and not heard, but let's give it a try for both.

(There is a pause in the proceedings.)

THE COURT:  Mr. Anders.

```
1              MR. ANDERS:  Yes.

2              THE COURT:  We can hear you but we do not see you,

3    and I cannot explain why.

4              MR. ANDERS:  Well, neither can I, unfortunately.

5              THE COURT:  I think this is the best we can do right

6    now.

7              MR. ANDERS:  Okay.  My apologies because I'm going to

8    be arguing, so --

9              THE COURT:  That's fine.  No apology needed.

10             So we have Gideon Anders representing plaintiffs.

11             Is anyone else -- Michael, do you want to enter your

12   appearance?

13             MR. PIJANOWSKI:  Yes, Your Honor.  Michael Pijanowski

14   for plaintiffs.

15             THE COURT:  Good afternoon to you as well.

16             Mr. Johnson, do you want to enter your appearance?

17             MR. JOHNSON:  Yes.  Ed Johnson, also for plaintiffs,

18   Your Honor.

19             THE COURT:  Appearing for defendant, Mr. Martin.

20   Would you enter your appearance.  And you are woefully

21   outnumbered.

22             MR. MARTIN:  Yes.  I'll have to fight a little

23   harder, Judge.  I'm joined here on the telephone with my

24   colleague, Assistant U.S. Attorney Josh Keller.

25             THE COURT:  All right.  Good afternoon, Mr. Martin
```

1   and Mr. Keller.

2          As you all know, I previously sent a tentative

3   opinion and order to all counsel.  You're welcome to argue

4   whatever you wish.  I think since the tentative opinion leans

5   towards granting the motion, I think it's most efficient for me

6   to turn to plaintiffs' counsel first to tell me have I

7   misunderstood any of the factual material stated in my

8   tentative opinion and order?  Have I misunderstood any of the

9   legal material that I've relied upon?  And welcome to make any

10  other arguments you wish, and both sides obviously are welcome

11  to tell me if there's been any changed circumstances since the

12  time that I sent my tentative order.

13          So, Mr. Anders, the floor is yours.

14          MR. ANDERS:  Thank you, Judge Simon.  I really

15  appreciate your granting us this hearing.

16          Before going to the substantive issues relating to

17  the tentative opinion, I'd like to make clear for purposes of

18  this argument, we concede that the individual plaintiffs'

19  claims are moot.  However, we believe that CARE, an

20  organization serving the housing needs of people living and

21  wanting to live in Tillamook County, is entitled to continue to

22  argue for both the declaratory and injunctive relief that it

23  sought when this case was filed, specifically that the

24  regulations and policies that the agency is using to evaluate

25  prepayments and operate the voucher program are contrary to law

1   and that the agency should be enjoined from relying on them in

2   the future.

3          CARE's primary issue with respect to the tentative

4   opinion is that it ignores and contradicts the Court's February

5   2018 decision with respect to the continued applicability and

6   scope of the voluntary cessation exception and thereby

7   erroneously justifies limiting the relief available to CARE.

8   The key statement in the tentative opinion asserts that the

9   voluntary cessation -- voluntary cessation exception no longer

10  applies because, "Defendants have not merely ceased the

11  challenged conduct.  Instead, the plaintiffs' claims are moot

12  because a nonparty has purchased Golden Eagle and assumed the

13  Section 515 loan."

14         This statement is simply wrong.  Moreover, contrary

15  to the tentative opinion, if the voluntary cessation exception

16  applies, CARE should not have to file a new lawsuit should

17  another prepayment be filed in Tillamook County.

18         Since the beginning of this case, there have been two

19  forms of conduct that the plaintiffs have challenged.  First,

20  the agency's reliance on the regulations that are contrary to

21  ELIHPA in determining an owner's eligibility to prepay a loan;

22  and second, its operation of the voucher program in an

23  arbitrary and capricious manner.  In both cases, the plaintiffs

24  ask for declaratory relief that the conduct was illegal and an

25  injunction preventing its recurrence.

1        After the defendants voluntarily withdrew their
2    initial decision and decided that the GE loan could not be
3    prepaid until the property was offered for sale, the defendants
4    filed a motion to dismiss, claiming that under the ordinary
5    standard for assessing mootness, the plaintiffs' claims were
6    moot.  The plaintiffs and ultimately the Court disagreed
7    because the case fell within the voluntary cessation exception
8    to mootness, and that under that exception, the case was not
9    moot.

10        In reaching the decision, the Court undertook a
11    lengthy discussion of the origins and purpose of the exception,
12    focusing on the Supreme Court's *Laidlaw* decision, which held
13    that the mere cessation of allegedly illegal conduct does not
14    moot a case, because if it did, the defendants in the case
15    would be free to return to its old ways.  *Laidlaw* decided that
16    under the voluntary cessation exception, it is assumed that the
17    case is moot if the ordinary standard for determining mootness
18    is used.  Critically, the voluntary cessation exception shifts
19    the burden -- consistently described as a heavy burden -- to
20    the defendants to show that it is absolutely clear that the
21    defendants' alleged behavior could not reasonably be expected
22    to recur.

23        In reaching the conclusion that the RD defendants did
24    not meet this burden, the Court pointed out several times that
25    the mere cessation of illegal conduct was not sufficient to

meet the defendants' burden because the same regulations and procedures are still in place, and the allegedly wrongful behavior can reasonably be expected to recur.  For example, in reaching the decision that the defendants did not meet their heavy burden of showing that the challenged action will not recur, the Court cited and relied on plaintiffs' argument that "If RD does not change its allegedly improper regulations or start using proper prepayment standards of review, RD will continue to violate ELIHPA, which will continue to frustrate CARE's mission and increase CARE's financial and personnel burdens in Tillamook County.  CARE will have to spend more time assisting its clients in finding affordable housing, challenging RD's illegal acceptance of prepayment requests, and providing additional financial assistance.  Additionally, at oral argument counsel for CARE confirmed that CARE would continue to file lawsuits in the future if additional properties received prepayment approval."

Thus CARE met the requirements for invoking the voluntary cessation exception.

Notably the Court, relying on the Ninth Circuit opinion in *Rosemere*, specifically found that the defendants' burden is not met just because no other prepayment application is currently pending in Tillamook.  The Court stated that it is not an insurmountable hurdle or extremely unlikely that a property in Tillamook County will seek repayment in the future

1    and CARE will challenge RD's process for considering such a

2    repayment.

3            The Court's earlier opinion notwithstanding, the

4    tentative opinion now states that the defendants have ceased to

5    challenge conduct and that CARE's case is moot because GE has

6    been sold and its loan assumed by a third party, namely

7    Northwest Coastal.

8            This is simply not true.  There is no evidence to

9    support the statement that the defendants have ceased to

10   challenge conduct.  The same regulations and policies that were

11   in place in 2016 and 2018 continue to exist, and RD has made no

12   statement whatsoever that it plans to change its conduct in the

13   future.  To the contrary, once this case is dismissed, it is

14   not merely free but is required to rely on the challenged

15   regulations and practices and revert to its old conduct.

16           The fact that GE was preserved and sold to Northwest

17   Coastal also does not show any change in the defendants'

18   position.  First, plaintiffs did not and could not have brought

19   an action to force a sale and to preserve GE.  There is no

20   statute or regulation that authorizes such a claim.  All the

21   plaintiffs sought was for RD to properly determine whether the

22   prepayment should be approved.  If CARE could not force the

23   preservation of GE, its sale and preservation are not evidence

24   that the agency has ceased the illegal activity.

25           Second, the sale and preservation of GE are actions

directly derivative of the agency's decision to voluntarily

withdraw its earlier prepayment decision.  There are not

subsequent factual development -- developments that moot

plaintiffs' earlier claims that the case is not moot.  All the

agency actions made after the agency withdrew its earlier

decision were ministerial, made by third parties or were

required by statute.  The decision to make and accept the

purchase offer were outside the agency's control.  The decision

where the Northwest Coastal was a nonprofit eligible to

purchase GE was ministerial.  The agency's decision to increase

the number of units that GE assisted by rental assistance, its

decision to allow Northwest Coastal to assume the outstanding

loan, and the agency's decision to provide Northwest Coastal

with financing to buy out the owner were all decisions that the

agency was required by statute to take, 42 U.S.C. Section

1472(c)(5)(C).  Thus, they were derivative of the initial

agency withdrawal of its prepayment decision and do not reflect

any change in the agency's position.

It follows that the tentative opinion's statement

that the voluntary cessation exception no longer applies to the

case, that only GE is at issue in this case, and that CARE is

not entitled to further relief because it does not challenge

any other prepayment pending in Tillamook County are all wrong.

The voluntary cessation exception is intended to prevent RD

from approving future prepayments using the challenged

1    regulations, and as the Court previously decided, CARE does not

2    have to show that other prepayments are pending because it

3    improperly shifts the burden from the defendants to the

4    plaintiff.

5            In short, the tentative opinion has failed to

6    properly conclude that the defendants have not met their burden

7    of showing that the challenged conduct will not recur.  It is

8    for these reasons that CARE asks that the Court deny the

9    defendants' motion to dismiss and allow the plaintiffs to

10   proceed to file a motion for summary judgment on their

11   remaining claims.

12           Thank you.

13           THE COURT:  Thank you, Mr. Anders.

14           I think I have a question for you, but I first want

15   to hear from Mr. Martin, and then I'll come back to you,

16   probably with my question, and of course give you an

17   opportunity to respond to whatever Mr. Martin says.

18           Mr. Martin.

19           MR. MARTIN:  Thank you, Your Honor.

20           We think that your tentative opinion and order is

21   accurate and well-founded.  We don't think there have been any

22   new circumstances since you shared that tentative ruling with

23   the parties.

24           Judge, it's agreed by all that this is an as-applied

25   challenge to the USDA's decision making with regard to the

1   Golden Eagle II apartment complex.  It doesn't relate to other

2   properties.  That's not a disputed matter.

3         But where we differ sharply with Mr. Anders'

4   perspective is we believe -- and we believe the Court

5   recognizes this -- that circumstances have changed

6   fundamentally and dramatically with the fact that this is no

7   longer a scenario with a private owner seeking prepayment with

8   Golden Eagle II, but that in fact a new nonprofit owner has

9   agreed to enter new financing, and most importantly remain

10  bound by Section 515 of the Housing Act for the next -- well, I

11  should say until late 2051.  Even if there's a title transfer,

12  this project is protected to late 2051.

13        It's much more than just USDA changing its mind about

14  a civil rights impact analysis with the prior owner, Judge.

15  That's where it's a different set of circumstances than when

16  the Court looked at it in 2018, in denying that motion to

17  dismiss.  Now, Judge, in many ways this is really out of the

18  government's hands.  You know, we have Northwest Coastal

19  Housing that has agreed to a restrictive use covenant, agreed

20  to new financing, and put everybody in the world on notice that

21  the protections that are in place are going to remain in place.

22  There's no evidence that Northwest Coastal Housing has any

23  interest in prepayment, having just in fact entered new

24  financing just about four months ago.

25        We don't think there's any type of scenario that's

1    live with regard to this project, as applied to this project,

2    Judge.  USDA entered this agreement.  Northwest Coastal Housing

3    has agreed to use restrictions and to the Housing Act

4    protections for the tenants until late 2051.  There's almost --

5    there's very little the government can do at this point because

6    so much of this is now with a new owner and doesn't involve

7    anything like the scenarios we had when it was with the

8    previous owner.

9            I would also add, Judge, that Mr. Anders' point

10   about, well, what if somebody else -- what if another housing

11   complex applies for prepayment?  Judge, that's just -- we don't

12   know if or when another project in Tillamook County or

13   somewhere else might be interested in prepayment.  That's

14   simply an unknown and doesn't relate to this as-applied

15   challenge in this case.

16           And, you know, as you pointed out in your tentative

17   opinion and order, that's going to be a new set of facts and a

18   new set of circumstances if and when another project somewhere

19   else enters this type of prepayment potential scenario, and the

20   facts then might warrant filing a complaint by an interested

21   party, but what might happen in the future somewhere else can't

22   keep this case alive, Judge.

23           So we would ask that you grant the motion to dismiss.

24   We recognize that would be a dismissal without prejudice, but

25   we don't think that there's anything live in the case at this

1    juncture, that it's awfully abstract, awfully academic, and

2    let's let this project be managed by Northwest Coastal Housing

3    without litigation on the sides of what should be a good

4    outcome of everybody involved.

5        THE COURT:  Thank you, Mr. Martin.

6        Let me ask you a follow-up Mr. Martin.  You say that

7    it's undisputed between the parties here that plaintiffs are

8    bringing an as-applied challenge relating to the Golden Eagle

9    property.  Let's accept that.

10        If they wanted to bring a facial challenge to the

11   general practices and procedures of Rural Development, how

12   could they do that, and in what court would it be proper?

13        MR. MARTIN:  That's an interesting question, Judge.

14   I think a challenge to general practices and procedures, I

15   mean, I do have to say that that sets off a bit of an alarm

16   bell in my mind that, you know, given the Administrative

17   Procedure Act being a limited waiver of sovereign immunity,

18   that generally a challenge would have to be tethered to an

19   action, to a final decision that has legal ramifications.  So I

20   want to make that point that you would need to find some sort

21   of decision, right, a final agency decision rather than just a

22   generalized challenge aimed at a general policy or aimed at

23   general administration of a program, but I would -- but I would

24   take it back to the APA, Judge.  I think that that is probably,

25   I'd say, the leading candidate for the type of challenge.  And

1    I believe it would be within the jurisdiction of the U.S.

2    District Court as well, just like this case was brought under

3    the APA.

4            I don't know if that answers your question.

5            THE COURT:  Now, a final agency action, that would be

6    the adoption, you know, of a final rule -- right? -- if they

7    wanted to challenge the adoption of a final rule?

8            MR. MARTIN:  Right.  If there were a final rule, if

9    it's a facial challenge, there would be an applicable statute

10   of limitations, of course, if this were not an as-applied

11   challenge.

12           THE COURT:  Thank you, Mr. Martin.

13           Let me go back to you, Mr. Anders.  I do have a

14   question to you, and then you're welcome to respond to anything

15   Mr. Martin said.

16           First question is do you agree with Mr. Martin's

17   comment that all parties agree here that this is an as-applied

18   challenge relating to the Golden Eagle property?

19           MR. ANDERS:  I agree insofar as the difference is

20   whether or not -- it is an as-applied challenge, but what it

21   means is that the statutory -- that the statute of limitation

22   for a facial challenge has lapsed, that the only way that this

23   case can go forward is by an as-applied -- by the decision as

24   applied in this case to GE.  It does not, however, relieve the

25   federal government from having to change its regulations

1    because they have misapplied it in the case of CARE.  So the

2    fact that it is an as-applied challenge simply deals with the

3    statute of limitations issue.  It does not deal with the relief

4    that CARE is entitled to receive.  And that's clearly what the

5    voluntary cessation exception says.  It's supposed to stop the

6    agency from continuing to practice -- take illegal actions as

7    it has before.

8              THE COURT:  Thank you.

9              Now, this is back to the original question that was

10   bothering me.  If this is an as-applied challenge relating to

11   the Golden Eagle or GE property, and if based upon the events

12   involving Northwest Coastal Housing, I believe that that

13   dispute is now moot.  I'm hearing what you're saying, and I saw

14   this in your papers and I'm hearing it in your argument that

15   there may be other properties in Tillamook County or elsewhere

16   where you object to the way Rural Development is likely to

17   handle things, based upon their past practices.  But that

18   strikes me, because it's unrelated and untethered to the Golden

19   Eagle property, that strikes me as essentially asking the Court

20   for an advisory opinion regarding how Rural Development has

21   been handling things and how they're likely to handle things

22   for other properties in the future.

23             What am I misunderstanding here?

24             MR. ANDERS:  The basic assumption in this case, and

25   the basic situation where the voluntary cessation exception

1 applies, it assumes that the underlying case is moot, and

2 that's what the Court decided in February 8th of 2018.  It held

3 and assumed that the case was moot with respect to GE.  But the

4 voluntary cessation exception is designed specifically to allow

5 a party to continue to challenge the practices of the agency,

6 because otherwise the agency could revert to using the same

7 practices over and over again without a challenge.

8          THE COURT:  No, but that's with respect to the

9 underlying issue or party.  I understand what you're saying,

10 and the reason why I previously rejected mootness, applying

11 the -- and rejected voluntary cessation as creating mootness

12 was simply because that was a decision by Rural Development.

13          Here we have something totally different.  Here we

14 now have Northwest Coastal Housing having signed a new

15 agreement to deal with Golden Eagle.  We're not going to have a

16 problem with Golden Eagle -- at least if we do, it's purely

17 speculative we might have a problem with Golden Eagle.  What I

18 hear you saying is, fine, Golden Eagle may be involved.  But

19 there may be other low-income housing projects that Rural

20 Development will handle the same way as you complained about

21 the way they originally handled Golden Eagle.

22          That doesn't strike me as a voluntary cessation

23 problem.  That strikes me as now trying to create your same

24 challenge but to other properties, but since there's none at

25 issue, that's what strikes me as an advisory opinion.  So it's

1   not purely a situation dealing with Rural Development, the

2   agency saying, fine, we won't do it that way, and therefore the

3   case is moot.  That's not why this case became moot.  The case

4   became moot because Northwest Coastal Housing bought the

5   property and took over the loan.

6           Am I misunderstanding something?

7           MR. ANDERS:  Let me see if I can make my point.  In

8   your earlier decision, you clear -- you made it clear that the

9   previous time that the government filed a motion to dismiss,

10  the case was not moot because the case was within the voluntary

11  cessation exception.

12          THE COURT:  Correct.

13          MR. ANDERS:  And at that point in time you clearly

14  pointed out that CARE is concerned about future prepayments,

15  not the prepayment of GE, but future payments of other

16  properties.

17          THE COURT:  If I said that, I might have spoken too

18  broadly.  I really think that if CARE would be concerned about

19  future problems with Golden Eagle, that would make sense.  I

20  think if I said that about other properties not involving

21  Golden Eagle, I may have misapplied voluntary cessation.

22          MR. ANDERS:  I don't believe that you have, Your

23  Honor, and I'd be more than pleased to, you know, provide

24  you -- I don't have the cases in front of me to suggest that

25  your decision at that point was perfectly fine and perfectly

1    correct, I just think that, you know, CARE being an independent

2    third party which is concerned about the housing rights of

3    people who are living in Tillamook County, is entitled to

4    challenge the practices of the agency without having continued

5    to challenge essentially whether GE is going to be prepaid

6    again or not.

7            THE COURT:  Well, let me ask you this.  Let's suppose

8    this case goes away.  Let's say I just dismiss it without

9    prejudice and you choose not to appeal.

10           By the way, I'll make a comment on appeal in a

11   moment.

12           So assuming this case goes away, CARE still has its

13   concerns about the way Rural Development handles these types of

14   situations.  I get that.  Can CARE bring a new lawsuit against

15   Rural Development, and what would that look like?  It wouldn't

16   relate to Golden Eagle because I think the Golden Eagle problem

17   is solved, or if it's not, the matter would be speculative to

18   say it's not.

19           So could they say, based upon the way Rural

20   Development has handled these situations in the past, CARE is

21   still concerned going forward, and they want both declaratory

22   and injunctive relief?

23           Now, would that be an as-applied challenge?  I don't

24   think so.  Would that be a facial challenge to the regulations?

25   If so, it might walk into the statute of limitations problem.

1   So what would it be?  And I would think that if CARE filed that

2   type of new lawsuit, the defendants would simply move to

3   dismiss it as essentially asking for an advisory opinion.

4         What would be the response of CARE and how would that

5   case be any different from our current case?

6         MR. ANDERS:  Well, it wouldn't be any different.  It

7   would be identical to this case if another property in

8   Tillamook County sought to prepay.

9         THE COURT:  No, I agree.  My question is what if

10   another property didn't seek to prepay.  Could you as CARE just

11   bring a case that says, hey, there may be in the future another

12   property that seeks to prepay, we want to clarify now that

13   Rural Development can't do it the way it's previously been

14   doing things, and therefore we want declaratory and injunctive

15   relief, even if you're not talking about any specific property,

16   just simply arguing this could again happen in the future.

17   Could you bring that sort of case?  Because my instinct is that

18   I don't think so.

19         MR. ANDERS:  I don't think so either, Your Honor, and

20   that's precisely what the voluntary cessation exception was

21   intended to avoid, having to bring a case where you do not have

22   actions on the part of the defendant which violate the law, and

23   allowing them to repeat.

24         I'm in fact -- I've been involved now in two, and

25   potentially three cases where the agency has in each instance

1 chosen to settle the case before there was any decision on the

2 merits, and the plaintiffs in those cases have not been able to

3 challenge the fundamental practice of the agency which is

4 illegal.  And that's what I believe the voluntary cessation

5 exception was intended to remedy.

6 THE COURT:  I'm going to take this under advisement,

7 but I've got to tell you I still am very skeptical.  On the

8 other hand, I think it would be very, very helpful to have

9 appellate clarification on the scope of the voluntary cessation

10 doctrine.  So although no litigant should ever have to worry

11 how a trial judge would feel if they appeal them, I'm giving

12 you blanket assurance right now, I will not be insulted if you

13 appeal this and it turns out that you're right.  I'd love to

14 get this case back with a clearer articulation of when

15 voluntary cessation does and doesn't apply from the Ninth

16 Circuit, but I think there's a difference in situation between

17 what we have now with Northwest Coastal and what we had back in

18 2018.  But if I'm wrong, I'm not going to complain about being

19 reversed on this one.

20 I'll think about it a little bit more, but that's the

21 direction that I'm leaning.  Mr. Anders, I do appreciate your

22 argument.  I appreciate the care in which you're

23 representing -- that's a strange way of saying it.  The care in

24 which you're representing CARE, I respect.

25 And Mr. Martin, I appreciate your arguments.

```
 1              I will take it under advisement, but I think I'll try
 2    to get the decision out relatively soon, especially if I'm
 3    going in the direction that I tentatively articulated.
 4              So thank you all very much.
 5              MR. ANDERS:  Would you like us to submit some case
 6    law?
 7              THE COURT:  Is there really a case that you think is
 8    squarely on point here that you've not previously cited?  And
 9    by the way, if there is, I will complain that you haven't
10    previously cited it.  But is there some case that's really on
11    point?  And if so, why didn't you previously cite it?
12              MR. ANDERS:  Well, because I -- we thought that
13    because of the voluntary cessation exception was applied in the
14    first instance and continued to apply, we didn't have to go out
15    of your previous opinion.
16              THE COURT:  I do think, as I put in the tentative
17    opinion, I think this is a different situation than we had in
18    2018.  I think this is probably best served for the Ninth
19    Circuit.  But I'll give it a little bit more thought.
20              But thank you both, and the motion to dismiss is
21    taken under advisement.  Thank you all and have a good day.
22              MR. PIJANOWSKI:  Thank you, Your Honor.
23              (Proceedings concluded at 3:33 p.m.)
24
25
```

1

2                                --oOo--

3

4           I certify, by signing below, that the foregoing is a

5      correct transcript of the record of proceedings in the

6      above-entitled cause.  A transcript without an original

7      signature or conformed signature is not certified.

8

9

       /s/Bonita J. Shumway                June 9, 2022
10     _____            _____
       BONITA J. SHUMWAY, CSR, RMR, CRR    DATE
11     Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MR. ANDERS: [16] 3/11 3/15 3/18 4/1 4/4 4/7 5/14 15/19 16/24 18/7 18/13 18/22 20/6 20/19 22/5 22/12
MR. JOHNSON: [1] 4/17
MR. MARTIN: [4] 4/22 11/19 14/13 15/8
MR. PIJANOWSKI: [2] 4/13 22/22
THE COURT: [24]

**-**

--o0o [1] 23/2

**/**

/s/Bonita [1] 23/9

**1**

10 [2] 1/7 3/2
1000 [2] 2/17 2/22
128 [1] 3/8
1472 [1] 10/16

**2**

2000 [1] 2/5
2016 [1] 9/11
2018 [6] 6/5 9/11 12/16 17/2 21/18 22/18
2022 [3] 1/7 3/2 23/9
2051 [3] 12/11 12/12 13/4
2116 [1] 3/6
230 [1] 2/12

**3**

301 [1] 2/22
326-8188 [1] 2/23
3:01 [1] 3/2
3:16-cv-2116 [1] 3/6
3:16-cv-2116-SI [1] 1/5
3:33 [1] 22/23

**4**

42 [1] 10/15

**5**

503 [1] 2/23
515 [2] 6/13 12/10
522 [1] 2/8

**6**

600 [1] 2/17

**7**

703 [1] 2/5

**8**

812 [1] 2/8
8188 [1] 2/23
8th [1] 17/2

**9**

97124 [1] 2/12
97204 [3] 2/9 2/17 2/22

**A**

able [1] 21/2
about [12] 12/13 12/24 13/10 17/20 18/14 18/18 18/20 19/2 19/13 20/15 21/18 21/20
above [1] 23/6
above-entitled [1] 23/6
absolutely [1] 7/20
abstract [1] 14/1
academic [1] 14/1
accept [2] 10/7 14/9
acceptance [1] 8/13
accurate [1] 11/21
Act [3] 12/10 13/3 14/17
action [5] 1/4 8/5 9/19 14/19 15/5
actions [4] 9/25 10/5 16/6 20/22
activity [1] 9/24
add [1] 13/9
additional [2] 8/14 8/16
Additionally [1] 8/14
administration [1] 14/23
Administrative [1] 14/16
adoption [2] 15/6 15/7
advisement [3] 21/6 22/1 22/21
advisory [3] 16/20 17/25 20/3
affordable [1] 8/12
after [2] 7/1 10/5
afternoon [3] 3/4 4/15 4/25
again [3] 17/7 19/6 20/16
against [1] 19/14
agency [16] 5/24 6/1 9/24 10/5 10/5 10/15 10/17 14/21 15/5 16/6 17/5 17/6 18/2 19/4 20/25 21/3
agency's [6] 6/20 10/1 10/8 10/10 10/13 10/18
ago [1] 12/24
agree [4] 15/16 15/17 15/19 20/9
agreed [5] 11/24 12/9 12/19 12/19 13/3
agreement [2] 13/2 17/15
Agriculture [1] 1/8

**Aid [1]** 2/11
aimed [2] 14/22 14/22
al [3] 1/8 3/5 3/6
alarm [1] 14/15
alive [1] 13/22
all [12] 3/13 4/25 5/2 5/3 9/20 10/4 10/14 10/23 11/24 15/17 22/4 22/21
alleged [1] 7/21
allegedly [3] 7/13 8/2 8/7
allow [3] 10/12 11/9 17/4
allowing [1] 20/23
almost [1] 13/4
also [3] 4/17 9/17 13/9
although [1] 21/10
am [4] 3/14 16/23 18/6 21/7
analysis [1] 12/14
Anders [9] 2/4 3/4 3/15 3/25 4/10 5/13 11/13 15/13 21/21
Anders' [2] 12/3 13/9
another [7] 6/17 13/10 13/12 13/18 20/7 20/10 20/11
answers [1] 15/4
any [14] 5/7 5/8 5/9 5/11 9/17 10/18 10/23 11/21 12/22 12/25 20/5 20/6 20/15 21/1
anyone [1] 4/11
anything [3] 13/7 13/25 15/14
APA [2] 14/24 15/3
apartment [1] 12/1
apologies [2] 3/11 4/7
apology [1] 4/9
appeal [4] 19/9 19/10 21/11 21/13
appearance [4] 3/10 4/12 4/16 4/20
APPEARANCES [1] 2/2
Appearing [1] 4/19
appellate [1] 21/9
applicability [1] 6/5
applicable [1] 15/9
application [1] 8/22
applied [13] 11/24 13/1 13/14 14/8 15/10 15/17 15/20 15/23 15/24 16/2 16/2 19/23 22/13
applies [5] 6/10 6/16 10/20 13/11 17/1
apply [2] 21/15 22/14
applying [1] 17/10
appreciate [4] 5/15 21/21 21/22 21/25
approval [1] 8/17
approved [1] 9/22
approving [1] 10/25
arbitrary [1] 6/23

## A

**are [18]** 3/5 3/7 4/20 5/10 5/19 5/25 6/11 6/20 8/2 9/23 9/25 10/2 10/23 11/2 12/21 12/21 14/7 19/3
**argue [2]** 5/3 5/22
**arguing [2]** 4/8 20/16
**argument [6]** 3/7 5/18 8/6 8/15 16/14 21/22
**arguments [2]** 5/10 21/25
**articulated [1]** 22/3
**articulation [1]** 21/14
**as [29]**
**as-applied [10]** 11/24 13/14 14/8 15/10 15/17 15/20 15/23 16/2 16/10 19/23
**ask [4]** 6/24 13/23 14/6 19/7
**asking [2]** 16/19 20/3
**asks [1]** 11/8
**asserts [1]** 6/8
**assessing [1]** 7/5
**assistance [2]** 8/14 10/11
**Assistant [1]** 4/24
**assisted [1]** 10/11
**assisting [1]** 8/12
**assume [1]** 10/12
**assumed [4]** 6/12 7/16 9/6 17/3
**assumes [1]** 17/1
**assuming [1]** 19/12
**assumption [1]** 16/24
**assurance [1]** 21/12
**Attorney [1]** 4/24
**Attorney's [1]** 2/16
**audio [1]** 3/17
**authorizes [1]** 9/20
**available [1]** 6/7
**Avenue [4]** 2/8 2/12 2/17 2/22
**avoid [1]** 20/21
**away [2]** 19/8 19/12
**awfully [2]** 14/1 14/1

## B

**back [7]** 3/21 11/15 14/24 15/13 16/9 21/14 21/17
**based [3]** 16/11 16/17 19/19
**basic [2]** 16/24 16/25
**be [37]**
**became [2]** 18/3 18/4
**because [21]** 4/7 6/10 6/12 7/7 7/14 8/1 8/22 9/5 10/22 11/2 13/5 16/1 16/18 17/6 17/12 18/4 18/10 19/16 20/17 22/12 22/13

## B (cont.)

**been [8]** 5/13 6/18 9/6 11/21 16/21 20/13 20/24 21/2
**before [4]** 1/18 5/16 16/7 21/1
**beginning [1]** 6/18
**behavior [2]** 7/21 8/3
**being [4]** 3/18 14/17 19/1 21/18
**believe [7]** 5/19 12/4 12/4 15/1 16/12 18/22 21/4
**bell [1]** 14/16
**below [1]** 23/4
**best [2]** 4/5 22/18
**better [1]** 3/22
**between [2]** 14/7 21/16
**bit [3]** 14/15 21/20 22/19
**blanket [1]** 21/12
**bonita [4]** 2/21 2/23 23/9 23/10
**both [6]** 3/23 5/10 5/22 6/23 19/21 22/20
**bothering [1]** 16/10
**bought [1]** 18/4
**bound [1]** 12/20
**bring [5]** 14/10 19/14 20/11 20/17 20/21
**bringing [1]** 14/8
**broadly [1]** 18/18
**brought [2]** 9/18 15/2
**burden [8]** 7/19 7/19 7/24 8/1 8/5 8/22 11/3 11/6
**burdens [1]** 8/11
**buy [1]** 10/14

## C

**CA [1]** 2/5
**can [9]** 3/16 4/2 4/4 4/5 8/3 13/5 15/23 18/7 19/14
**can't [2]** 13/21 20/13
**candidate [1]** 14/25
**cannot [1]** 4/3
**capricious [1]** 6/23
**care [26]**
**CARE's [4]** 6/3 8/10 8/10 9/5
**case [43]**
**cases [4]** 6/23 18/24 20/25 21/2
**cause [1]** 23/6
**ceased [4]** 6/10 9/4 9/9 9/24
**Center [1]** 2/7
**certified [1]** 23/7
**certify [1]** 23/4
**cessation [24]**
**challenge [28]**
**challenged [6]** 6/11 6/19 8/5 9/14 10/25 11/7
**challenging [1]** 8/13

## C (cont.)

**change [5]** 8/7 9/12 9/17 10/18 15/25
**changed [2]** 5/11 12/5
**changing [1]** 12/13
**choose [1]** 19/9
**chosen [1]** 21/1
**Circuit [3]** 8/20 21/16 22/19
**circumstances [5]** 5/11 11/22 12/5 12/15 13/18
**cite [1]** 22/11
**cited [3]** 8/6 22/8 22/10
**civil [1]** 12/14
**claim [1]** 9/20
**claiming [1]** 7/4
**claims [5]** 5/19 6/11 7/5 10/4 11/11
**clarification [1]** 21/9
**clarify [1]** 20/12
**clear [4]** 5/17 7/20 18/8 18/8
**clearer [1]** 21/14
**clearly [2]** 16/4 18/13
**clients [1]** 8/12
**Coastal [13]** 9/7 9/17 10/9 10/12 10/13 12/18 12/22 13/2 14/2 16/12 17/14 18/4 21/17
**colleague [1]** 4/24
**come [1]** 11/15
**comment [2]** 15/17 19/10
**COMMUNITY [1]** 1/3
**complain [2]** 21/18 22/9
**complained [1]** 17/20
**complaint [1]** 13/20
**complex [2]** 12/1 13/11
**concede [1]** 5/18
**concerned [4]** 18/14 18/18 19/2 19/21
**concerns [1]** 19/13
**conclude [1]** 11/6
**concluded [1]** 22/23
**conclusion [1]** 7/23
**conduct [10]** 6/11 6/19 6/24 7/13 7/25 9/5 9/10 9/12 9/15 11/7
**confirmed [1]** 8/15
**conformed [1]** 23/7
**connecting [1]** 3/21
**considering [1]** 9/1
**consistently [1]** 7/19
**continue [6]** 5/21 8/9 8/9 8/16 9/11 17/5
**continued [3]** 6/5 19/4 22/14
**continuing [1]** 16/6
**contradicts [1]** 6/4
**contrary [4]** 5/25 6/14 6/20 9/13

## C

**control** [1]  10/8
**correct** [4]  3/14 18/12 19/1
23/5
**could** [10]  7/2 7/21 9/18 9/22
14/12 17/6 19/19 20/10 20/16
20/17
**counsel** [4]  3/9 5/3 5/6 8/15
**County** [9]  5/21 6/17 8/11 8/25
10/23 13/12 16/15 19/3 20/8
**course** [2]  11/16 15/10
**court** [18]  1/1 1/19 2/21 7/6
7/10 7/24 8/6 8/20 8/23 11/1
11/8 12/4 12/16 14/12 15/2
16/19 17/2 23/11
**Court's** [3]  6/4 7/12 9/3
**Courthouse** [1]  2/21
**covenant** [1]  12/19
**create** [1]  17/23
**creating** [1]  17/11
**Critically** [1]  7/18
**CRR** [2]  2/21 23/10
**CSR** [2]  2/21 23/10
**current** [1]  20/5
**currently** [1]  8/23
**cv** [2]  1/5 3/6

## D

**DATE** [1]  23/10
**day** [1]  22/21
**deal** [2]  16/3 17/15
**dealing** [1]  18/1
**deals** [1]  16/2
**decided** [4]  7/2 7/15 11/1 17/2
**decision** [24]
**decisions** [1]  10/14
**declaratory** [4]  5/22 6/24 19/21
20/14
**defendant** [2]  4/19 20/22
**defendants** [14]  1/9 2/15 6/10
7/1 7/3 7/14 7/20 7/23 8/4 9/4
9/9 11/3 11/6 20/2
**defendants'** [6]  3/7 7/21 8/1
8/21 9/17 11/9
**deny** [1]  11/8
**denying** [1]  12/16
**Department** [1]  1/8
**derivative** [2]  10/1 10/16
**described** [1]  7/19
**designed** [1]  17/4
**determine** [1]  9/21
**determining** [2]  6/21 7/17
**development** [11]  10/3 14/11
16/16 16/20 17/12 17/20 18/1

19/13 19/15 19/20 20/13
**developments** [1]  10/3
**did** [4]  7/14 7/23 8/4 9/18
**didn't** [3]  20/10 22/11 22/14
**differ** [1]  12/3
**difference** [2]  15/19 21/16
**different** [5]  12/15 17/13 20/5
20/6 22/17
**direction** [2]  21/21 22/3
**directly** [1]  10/1
**disagreed** [1]  7/6
**disconnect** [1]  3/21
**discussion** [1]  7/11
**dismiss** [9]  3/7 7/4 11/9 12/17
13/23 18/9 19/8 20/3 22/20
**dismissal** [1]  13/24
**dismissed** [1]  9/13
**dispute** [1]  16/13
**disputed** [1]  12/2
**DISTRICT** [6]  1/1 1/2 1/19 2/16
2/21 15/2
**do** [16]  4/2 4/5 4/11 4/16 10/17
13/5 14/12 14/15 15/13 15/16
17/16 18/2 20/13 20/21 21/21
22/16
**Docket** [1]  3/7
**doctrine** [1]  21/10
**does** [8]  7/13 8/7 9/17 10/22
11/1 15/24 16/3 21/15
**doesn't** [5]  12/1 13/6 13/14
17/22 21/15
**doing** [1]  20/14
**don't** [11]  3/19 11/21 12/25
13/11 13/25 15/4 18/22 18/24
19/23 20/18 20/19
**dramatically** [1]  12/6

## E

**each** [1]  20/25
**Eagle** [16]  6/12 12/1 12/8 14/8
15/18 16/11 16/19 17/15 17/16
17/17 17/18 17/21 18/19 18/21
19/16 19/16
**earlier** [5]  9/3 10/2 10/4 10/5
18/8
**Ed** [1]  4/17
**Edward** [1]  2/7
**efficient** [1]  5/5
**either** [2]  3/16 20/19
**eligibility** [1]  6/21
**eligible** [1]  10/9
**ELIHPA** [2]  6/21 8/9
**else** [5]  4/11 13/10 13/13 13/19
13/21
**elsewhere** [1]  16/15

**enjoined** [1]  6/1
**enter** [5]  3/9 4/11 4/16 4/20
12/9
**entered** [2]  12/23 13/2
**ENTERPRISES** [1]  1/4
**enters** [1]  13/19
**entitled** [5]  5/21 10/22 16/4
19/3 23/6
**erroneously** [1]  6/7
**especially** [1]  22/2
**essentially** [3]  16/19 19/5 20/3
**et** [3]  1/8 3/5 3/6
**evaluate** [1]  5/24
**even** [2]  12/11 20/15
**events** [1]  16/11
**ever** [1]  21/10
**everybody** [2]  12/20 14/4
**everyone** [1]  3/4
**evidence** [3]  9/8 9/23 12/22
**example** [1]  8/3
**exception** [18]  6/6 6/9 6/15 7/7
7/8 7/11 7/16 7/18 8/19 10/20
10/24 16/5 16/25 17/4 18/11
20/20 21/5 22/13
**exist** [1]  9/11
**expected** [2]  7/21 8/3
**explain** [1]  4/3
**extremely** [1]  8/24

## F

**facial** [4]  14/10 15/9 15/22
19/24
**fact** [6]  9/16 12/6 12/8 12/23
16/2 20/24
**facts** [2]  13/17 13/20
**factual** [2]  5/7 10/3
**failed** [1]  11/5
**February** [2]  6/4 17/2
**February 8th** [1]  17/2
**federal** [1]  15/25
**feel** [1]  21/11
**fell** [1]  7/7
**Fifth** [1]  2/8
**fight** [1]  4/22
**file** [3]  6/16 8/16 11/10
**filed** [5]  5/23 6/17 7/4 18/9
20/1
**filing** [1]  13/20
**final** [6]  14/19 14/21 15/5 15/6
15/7 15/8
**financial** [2]  8/10 8/14
**financing** [4]  10/14 12/9 12/20
12/24
**find** [1]  14/20
**finding** [1]  8/12

## F

**fine [5]** 3/22 4/9 17/18 18/2 18/25
**first [7]** 3/9 5/6 6/19 9/18 11/14 15/16 22/14
**floor [1]** 5/13
**focusing [1]** 7/12
**follow [1]** 14/6
**follow-up [1]** 14/6
**follows [1]** 10/19
**force [2]** 9/19 9/22
**foregoing [1]** 23/4
**forms [1]** 6/19
**forward [2]** 15/23 19/21
**found [1]** 8/21
**founded [1]** 11/21
**four [1]** 12/24
**Francisco [1]** 2/5
**FRED [1]** 1/3
**free [2]** 7/15 9/14
**front [1]** 18/24
**frustrate [1]** 8/9
**fundamental [1]** 21/3
**fundamentally [1]** 12/6
**further [1]** 10/22
**future [12]** 6/2 8/16 8/25 9/13 10/25 13/21 16/22 18/14 18/15 18/19 20/11 20/16

## G

**GE [14]** 7/2 9/5 9/16 9/19 9/23 9/25 10/10 10/11 10/21 15/24 16/11 17/3 18/15 19/5
**general [4]** 14/11 14/14 14/22 14/23
**generalized [1]** 14/22
**generally [1]** 14/18
**get [3]** 19/14 21/14 22/2
**Gideon [2]** 2/4 4/10
**give [3]** 3/23 11/16 22/19
**given [1]** 14/16
**giving [1]** 21/11
**glad [1]** 3/20
**go [3]** 15/13 15/23 22/14
**goes [2]** 19/8 19/12
**going [10]** 4/7 5/16 12/21 13/17 17/15 19/5 19/21 21/6 21/18 22/3
**Golden [16]** 6/12 12/1 12/8 14/8 15/18 16/11 16/18 17/15 17/16 17/17 17/18 17/21 18/19 18/21 19/16 19/16
**good [5]** 3/4 4/15 4/25 14/3 22/21

**get [1]** 21/7
**government [3]** 13/5 15/25 18/9
**government's [1]** 12/18
**grant [1]** 13/23
**granting [2]** 5/5 5/15

## H

**had [3]** 13/7 21/17 22/17
**hand [1]** 21/8
**handle [3]** 16/17 16/21 17/20
**handled [2]** 17/21 19/20
**handles [1]** 19/13
**handling [1]** 16/21
**hands [1]** 12/18
**happen [2]** 13/21 20/16
**harder [1]** 4/23
**has [16]** 6/12 9/5 9/11 9/24 11/5 12/8 12/19 12/22 13/3 14/19 15/22 16/7 16/20 19/12 19/20 20/25
**have [37]**
**haven't [1]** 22/9
**having [5]** 12/23 15/25 17/14 19/4 20/21
**hear [4]** 3/17 4/2 11/15 17/18
**heard [2]** 3/22 3/23
**hearing [4]** 1/15 5/15 16/13 16/14
**heavy [2]** 7/19 8/5
**held [2]** 7/12 17/2
**helpful [1]** 21/8
**here [9]** 3/5 3/7 4/23 14/7 15/17 16/23 17/13 17/13 22/8
**hey [1]** 20/11
**Hillsboro [1]** 2/12
**Honor [6]** 4/13 4/18 11/19 18/23 20/19 22/22
**HONORABLE [1]** 1/18
**housing [15]** 2/4 5/20 8/12 12/10 12/19 12/22 13/2 13/3 13/10 14/2 16/12 17/14 17/19 18/4 19/2
**how [5]** 14/11 16/20 16/21 20/4 21/11
**however [2]** 5/19 15/24
**hurdle [1]** 8/24

## I

**I'd [4]** 5/17 14/25 18/23 21/13
**I'll [8]** 3/9 3/20 4/22 11/15 19/10 21/20 22/1 22/19
**I'm [11]** 4/7 4/23 16/13 16/14 20/24 21/6 21/11 21/18 21/18 21/21 22/2

**I've [3]** 5/9 20/24 21/7
**identical [1]** 20/7
**ignores [1]** 6/4
**II [2]** 12/1 12/8
**illegal [7]** 6/24 7/13 7/25 8/13 9/24 16/6 21/4
**immunity [1]** 14/17
**impact [1]** 12/14
**importantly [1]** 12/9
**improper [1]** 8/7
**improperly [1]** 11/3
**INC [1]** 1/4
**income [1]** 17/19
**increase [2]** 8/10 10/10
**independent [1]** 19/1
**individual [1]** 5/18
**initial [2]** 7/2 10/16
**injunction [1]** 6/25
**injunctive [3]** 5/22 19/22 20/14
**insofar [1]** 15/19
**instance [2]** 20/25 22/14
**Instead [1]** 6/11
**instinct [1]** 20/17
**insulted [1]** 21/12
**insurmountable [1]** 8/24
**intended [3]** 10/24 20/21 21/5
**interest [1]** 12/23
**interested [2]** 13/13 13/20
**interesting [1]** 14/13
**invite [1]** 3/9
**invoking [1]** 8/18
**involve [1]** 13/6
**involved [3]** 14/4 17/18 20/24
**involving [2]** 16/12 18/20
**is [72]**
**issue [6]** 6/3 10/21 16/3 17/9 17/25
**issues [1]** 5/16
**it [48]**
**it's [15]** 3/22 5/5 11/24 12/13 12/15 14/1 14/7 15/9 16/5 16/18 17/16 17/25 19/17 19/18 20/13
**its [16]** 6/22 6/25 7/15 8/7 8/12 9/6 9/12 9/15 9/23 10/2 10/5 10/11 10/17 12/13 15/25 19/12

## J

**Johnson [3]** 2/7 4/16 4/17
**joined [1]** 4/23
**Josh [1]** 4/24
**Joshua [1]** 2/15
**judge [15]** 1/19 3/4 3/11 4/23 5/14 11/24 12/14 12/17 13/2 13/9 13/11 13/22 14/13 14/24

## J

judge... [1]  21/11
judgment [1]  11/10
juncture [1]  14/1
June [1]  23/9
jurisdiction [1]  15/1
just [12]  3/17 8/22 12/13 12/23
12/24 13/11 14/21 15/2 19/1
19/8 20/10 20/16
justifies [1]  6/7

## K

keep [1]  13/22
Keller [3]  2/15 4/24 5/1
key [1]  6/8
know [10]  3/19 5/2 12/18 13/12
13/16 14/16 15/4 15/6 18/23
19/1

## L

Laidlaw [2]  7/12 7/15
lapsed [1]  15/21
late [3]  12/11 12/12 13/4
law [5]  2/4 2/7 5/25 20/22 22/6
lawsuit [3]  6/16 19/14 20/2
lawsuits [1]  8/16
leading [1]  14/25
leaning [1]  21/21
leans [1]  5/4
least [1]  17/16
legal [3]  2/11 5/9 14/19
lengthy [1]  7/11
let [5]  14/2 14/6 15/13 18/7
19/7
let's [5]  3/23 14/2 14/9 19/7
19/8
like [6]  3/13 5/17 13/7 15/2
19/15 22/5
likely [2]  16/16 16/21
limitation [1]  15/21
limitations [3]  15/10 16/3
19/25
limited [1]  14/17
limiting [1]  6/7
LISA [2]  1/3 3/5
litigant [1]  21/10
litigation [1]  14/3
little [4]  4/22 13/5 21/20 22/19
live [3]  5/21 13/1 13/25
living [2]  5/20 19/3
loan [6]  6/13 6/21 7/2 9/6
10/13 18/5
longer [2]  6/9 10/20 12/7
look [1]  19/15
looked [1]  12/16

## M

love [1]  21/13
low [1]  17/19
low-income [1]  17/19

## M

made [4]  9/11 10/5 10/6 18/8
make [7]  5/9 5/17 10/7 14/20
18/7 18/19 19/10
making [1]  11/25
managed [1]  14/2
manner [1]  6/23
many [1]  12/17
Market [1]  2/5
Martin [11]  2/15 4/19 4/25
11/15 11/17 11/18 14/5 14/6
15/12 15/15 21/25
Martin's [1]  15/16
material [2]  5/7 5/9
matter [2]  12/2 19/17
may [7]  1/7 3/2 16/15 17/18
17/19 18/21 20/11
MCFALLS [3]  1/3 1/3 3/5
me [15]  3/22 5/5 5/6 5/11 14/6
15/13 16/10 16/18 16/19 17/22
17/23 17/25 18/7 18/24 19/7
mean [1]  14/15
means [1]  15/21
meet [3]  7/24 8/1 8/4
mere [2]  7/13 7/25
merely [2]  6/10 9/14
merits [1]  21/2
met [3]  8/18 8/22 11/6
MICHAEL [5]  1/3 1/18 2/11
4/11 4/13
might [6]  13/13 13/20 13/21
17/17 18/17 19/25
mind [3]  3/18 12/13 14/16
ministerial [2]  10/6 10/10
misapplied [2]  16/1 18/21
mission [1]  8/10
misunderstanding [2]  16/23
18/6
misunderstood [2]  5/7 5/8
moment [1]  19/11
months [1]  12/24
moot [16]  5/19 6/11 7/6 7/9
7/14 7/17 9/5 10/3 10/4 16/13
17/1 17/3 18/3 18/3 18/4 18/10
mootness [5]  7/5 7/8 7/17
17/10 17/11
more [5]  8/11 12/13 18/23
21/20 22/19
Moreover [1]  6/14
most [2]  5/5 12/9
motion [10]  1/15 3/7 5/5 7/4

## N

N.E [1]  2/12
namely [1]  9/6
National [1]  2/4
need [1]  14/20
needed [1]  4/9
needs [1]  5/20
neither [1]  4/4
new [12]  6/16 11/22 12/8 12/9
12/20 12/23 13/6 13/17 13/18
17/14 19/14 20/2
next [1]  12/10
Ninth [3]  8/20 21/15 22/18
no [15]  1/5 2/8 3/6 4/9 6/9 8/22
9/8 9/11 9/19 10/20 12/6 12/22
17/8 20/9 21/10
none [1]  17/24
nonparty [1]  6/12
nonprofit [2]  10/9 12/8
Northwest [13]  9/7 9/16 10/9
10/12 10/13 12/18 12/22 13/2
14/2 16/12 17/14 18/4 21/17
not [54]
Notably [1]  8/20
notice [1]  12/20
notwithstanding [1]  9/3
now [14]  4/6 9/4 12/17 13/6
15/5 16/9 16/13 17/14 17/23
19/23 20/12 20/24 21/12 21/17
number [1]  10/11

move [1]  20/2
Mr [5]  2/4 2/7 2/11 2/15 2/15
Mr. [22]  3/14 3/15 3/25 4/16
4/19 4/25 5/1 5/13 11/13 11/15
11/17 11/18 12/3 13/9 14/5
14/6 15/12 15/13 15/15 15/16
21/21 21/25
Mr. Anders [7]  3/14 3/15 3/25
5/13 11/13 15/13 21/21
Mr. Anders' [2]  12/3 13/9
Mr. Johnson [1]  4/16
Mr. Keller [1]  5/1
Mr. Martin [10]  4/19 4/25 11/15
11/17 11/18 14/5 14/6 15/12
15/15 21/25
Mr. Martin's [1]  15/16
much [3]  12/13 13/6 22/4
my [11]  3/11 3/12 4/7 4/23 5/7
5/12 11/16 14/16 18/7 20/9
20/17

# O

**object** [1]  16/16
**obviously** [1]  5/10
**off** [1]  14/15
**offer** [1]  10/8
**offered** [1]  7/3
**Office** [1]  2/16
**Official** [1]  23/11
**Okay** [2]  3/16 4/7
**old** [2]  7/15 9/15
**once** [1]  9/13
**one** [1]  21/19
**only** [2]  10/21 15/22
**operate** [1]  5/25
**operation** [1]  6/22
**opinion** [18]  5/3 5/4 5/8 5/17 6/4 6/8 6/15 8/21 9/3 9/4 11/5 11/20 13/17 16/20 17/25 20/3 22/15 22/17
**opinion's** [1]  10/19
**opportunity** [1]  11/17
**oral** [1]  8/15
**ord.uscourts.gov** [1]  2/23
**order** [5]  5/3 5/8 5/12 11/20 13/17
**ordinary** [2]  7/4 7/17
**OREGON** [5]  1/2 1/9 2/7 2/11 2/16
**organization** [1]  5/20
**original** [2]  16/9 23/6
**originally** [1]  17/21
**origins** [1]  7/11
**other** [12]  5/10 8/22 10/23 11/2 12/1 16/15 16/22 17/19 17/24 18/15 18/20 21/8
**otherwise** [1]  17/6
**our** [1]  20/5
**out** [8]  7/24 10/14 12/17 13/16 18/14 21/13 22/2 22/14
**outcome** [1]  14/4
**outnumbered** [1]  4/21
**outside** [1]  10/8
**outstanding** [1]  10/12
**over** [3]  17/7 17/7 18/5
**owner** [6]  10/14 12/7 12/8 12/14 13/6 13/8
**owner's** [1]  6/21

# P

**p.m** [2]  3/2 22/23
**papers** [1]  16/14
**part** [1]  20/22
**parties** [4]  10/6 11/23 14/7 15/17

**party** [5]  9/6 13/21 17/5 17/9 19/2
**past** [2]  16/17 19/20
**pause** [1]  3/24
**payments** [1]  18/15
**pending** [3]  8/23 10/23 11/2
**people** [2]  5/20 19/3
**perfectly** [2]  18/25 18/25
**personnel** [1]  8/10
**perspective** [1]  12/4
**Pijanowski** [2]  2/11 4/13
**place** [4]  8/2 9/11 12/21 12/21
**plaintiff** [1]  11/4
**plaintiffs** [14]  1/5 2/4 3/9 4/10 4/14 4/17 6/19 6/23 7/6 9/18 9/21 11/9 14/7 21/2
**plaintiffs'** [6]  5/6 5/18 6/11 7/5 8/6 10/4
**plans** [1]  9/12
**pleased** [1]  18/23
**point** [8]  13/5 13/9 14/20 18/7 18/13 18/25 22/8 22/12
**pointed** [3]  7/24 13/16 18/14
**policies** [2]  5/24 9/10
**policy** [1]  14/22
**Portland** [4]  1/9 2/9 2/17 2/22
**position** [2]  9/18 10/18
**potential** [1]  13/19
**potentially** [1]  20/25
**practice** [2]  16/6 21/3
**practices** [7]  9/15 14/11 14/14 16/17 17/5 17/7 19/4
**precisely** [1]  20/20
**prefer** [1]  3/17
**prejudice** [2]  13/24 19/9
**prepaid** [2]  7/3 19/5
**prepay** [4]  6/21 20/8 20/10 20/12
**prepayment** [15]  6/17 8/8 8/13 8/17 8/22 9/22 10/2 10/17 10/23 12/7 12/23 13/11 13/13 13/19 18/15
**prepayments** [4]  5/25 10/25 11/2 18/14
**preservation** [3]  9/23 9/23 9/25
**preserve** [1]  9/19
**preserved** [1]  9/16
**prevent** [1]  10/24
**preventing** [1]  6/25
**previous** [3]  13/8 18/9 22/15
**previously** [7]  5/2 11/1 17/10 20/13 22/8 22/10 22/11
**primary** [1]  6/3
**prior** [1]  12/14

**private** [1]  12/3
**probably** [3]  11/16 14/24 22/18
**problem** [5]  17/16 17/17 17/23 19/16 19/25
**problems** [1]  18/19
**Procedure** [1]  14/17
**procedures** [3]  8/2 14/11 14/14
**proceed** [1]  11/10
**proceedings** [4]  1/17 3/24 22/23 23/5
**process** [1]  9/1
**program** [3]  5/25 6/22 14/23
**project** [7]  2/4 12/12 13/1 13/1 13/12 13/18 14/2
**projects** [1]  17/19
**proper** [2]  8/8 14/12
**properly** [2]  9/21 11/6
**properties** [7]  8/17 12/2 16/15 16/22 17/24 18/16 18/20
**property** [11]  7/3 8/25 14/9 15/18 16/11 16/19 18/5 20/7 20/10 20/12 20/15
**protected** [1]  12/12
**protections** [2]  12/21 13/4
**provide** [2]  10/13 18/23
**providing** [1]  8/14
**purchase** [2]  10/8 10/10
**purchased** [1]  6/12
**purely** [2]  17/16 18/1
**purpose** [1]  7/11
**purposes** [1]  5/17
**put** [2]  12/20 22/16

# Q

**question** [8]  11/14 11/16 14/13 15/4 15/14 15/16 16/9 20/9

# R

**ramifications** [1]  14/19
**rather** [1]  14/21
**RD** [6]  7/23 8/7 8/8 9/11 9/21 10/24
**RD's** [2]  8/13 9/1
**reaching** [3]  7/10 7/23 8/4
**really** [5]  5/14 12/17 18/18 22/7 22/10
**reason** [2]  3/12 17/10
**reasonably** [2]  7/21 8/3
**reasons** [1]  11/8
**receive** [1]  16/4
**received** [1]  8/17
**recognize** [1]  13/24
**recognizes** [1]  12/5
**reconnect** [1]  3/16

**record [1]** 23/5
**recur [4]** 7/22 8/3 8/6 11/7
**recurrence [1]** 6/25
**reflect [1]** 10/17
**regard [2]** 11/25 13/1
**regarding [1]** 16/20
**regulation [1]** 9/20
**regulations [9]** 5/24 6/20 8/1
8/7 9/10 9/15 11/1 15/25 19/24
**rejected [2]** 17/10 17/11
**relate [3]** 12/1 13/14 19/16
**relating [4]** 5/16 14/8 15/18
16/10
**relatively [1]** 22/2
**reliance [1]** 6/20
**relied [2]** 5/9 8/6
**relief [7]** 5/22 6/7 6/24 10/22
16/3 19/22 20/15
**relieve [1]** 15/24
**rely [1]** 9/14
**relying [2]** 6/1 8/20
**remain [2]** 12/9 12/21
**remaining [1]** 11/11
**remedy [1]** 21/5
**rental [1]** 10/11
**repayment [2]** 8/25 9/2
**repeat [1]** 20/23
**REPORTER [2]** 2/21 23/11
**representing [3]** 4/10 21/23
21/24
**requests [1]** 8/13
**required [3]** 9/14 10/7 10/15
**requirements [1]** 8/18
**RESOURCE [1]** 1/4
**respect [5]** 6/3 6/5 17/3 17/8
21/24
**respond [2]** 11/17 15/14
**response [1]** 20/4
**restrictions [1]** 13/3
**restrictive [1]** 12/19
**return [1]** 7/15
**reversed [1]** 21/19
**revert [2]** 9/15 17/6
**review [1]** 8/8
**right [8]** 3/13 4/5 4/25 14/21
15/6 15/8 21/12 21/13
**rights [2]** 12/14 19/2
**RMR [2]** 2/21 23/10
**Room [1]** 2/22
**Rosemere [1]** 8/21
**rule [3]** 15/6 15/7 15/8
**ruling [1]** 11/22
**Rural [10]** 14/11 16/16 16/20

17/12 17/19 18/1 19/13 19/15
19/19 20/13

**S**

**S.W [3]** 2/8 2/17 2/22
**said [3]** 15/15 18/17 18/20
**sale [4]** 7/3 9/19 9/23 9/25
**same [5]** 8/1 9/10 17/6 17/20
17/23
**San [1]** 2/5
**saw [1]** 16/13
**say [7]** 12/11 14/6 14/15 14/25
19/8 19/18 19/19
**saying [5]** 16/13 17/9 17/18
18/2 21/23
**says [3]** 11/17 16/5 20/11
**scenario [3]** 12/7 12/25 13/19
**scenarios [1]** 13/7
**scope [2]** 6/6 21/9
**Sean [1]** 2/15
**second [3]** 2/12 6/22 9/25
**Secretary [2]** 1/7 3/6
**Section [3]** 6/13 10/15 12/10
**see [2]** 4/2 18/7
**seek [2]** 8/25 20/10
**seeking [1]** 12/7
**seeks [1]** 20/12
**seen [3]** 3/18 3/23 3/23
**sense [1]** 18/19
**sent [2]** 5/2 5/12
**served [1]** 22/18
**Services [1]** 2/11
**serving [1]** 5/20
**set [3]** 12/15 13/17 13/18
**sets [1]** 14/15
**settle [1]** 21/1
**several [1]** 7/24
**shared [1]** 11/22
**sharply [1]** 12/3
**shifts [2]** 7/18 11/3
**short [1]** 11/5
**should [7]** 6/1 6/16 6/16 9/22
12/11 14/3 21/10
**show [3]** 7/20 9/17 11/2
**showing [3]** 3/12 8/5 11/7
**shumway [4]** 2/21 2/23 23/9
23/10
**SI [1]** 1/5
**sides [2]** 5/10 14/3
**signature [2]** 23/7 23/7
**signed [1]** 17/14
**signing [1]** 23/4
**SIMON [4]** 1/18 3/5 3/11 5/14
**simply [7]** 6/14 9/8 13/14 16/2
17/12 20/2 20/16

**since [5]** 5/4 5/11 6/18 11/22
17/24
**sir [2]** 3/14 3/15
**situation [4]** 16/25 18/1 21/16
22/17
**situations [2]** 19/14 19/20
**skeptical [1]** 21/7
**so [18]** 4/8 4/10 5/13 13/6
13/23 14/19 16/1 17/25 19/12
19/19 19/24 19/25 20/1 20/18
20/19 21/10 22/4 22/11
**sold [2]** 9/6 9/16
**solved [1]** 19/17
**some [4]** 3/11 14/20 22/5 22/10
**somebody [1]** 13/10
**something [2]** 17/13 18/6
**somewhere [3]** 13/13 13/18
13/21
**soon [1]** 22/2
**sort [2]** 14/20 20/17
**sought [3]** 5/23 9/21 20/8
**sounds [1]** 3/13
**sovereign [1]** 14/17
**specific [1]** 20/15
**specifically [3]** 5/23 8/21 17/4
**speculative [2]** 17/17 19/17
**spend [1]** 8/11
**spoken [1]** 18/17
**squarely [1]** 22/8
**standard [2]** 7/5 7/17
**standards [1]** 8/8
**start [1]** 8/8
**State [1]** 2/8
**stated [2]** 5/7 8/23
**statement [5]** 6/8 6/14 9/9 9/12
10/19
**states [5]** 1/1 1/19 2/16 2/21
9/4
**statute [7]** 9/20 10/7 10/15
15/9 15/21 16/3 19/25
**statutory [1]** 15/21
**still [4]** 8/2 19/12 19/21 21/7
**stop [1]** 16/5
**strange [1]** 21/23
**Street [1]** 2/5
**strike [1]** 17/22
**strikes [4]** 16/18 16/19 17/23
17/25
**submit [1]** 22/5
**subsequent [1]** 10/3
**substantive [1]** 5/16
**such [2]** 9/1 9/20
**sufficient [1]** 7/25
**suggest [1]** 18/24
**Suite [3]** 2/5 2/12 2/17

**S**

**summary [1]**  11/10
**support [2]**  2/8 9/9
**suppose [1]**  19/7
**supposed [1]**  16/5
**Supreme [1]**  7/12

**T**

**take [5]**  10/15 14/24 16/6 21/6
22/1
**taken [1]**  22/21
**talking [1]**  20/15
**telephone [2]**  2/15 4/23
**tell [3]**  5/6 5/11 21/7
**tenants [1]**  13/4
**tentative [15]**  5/2 5/4 5/8 5/12
5/17 6/3 6/8 6/15 9/4 10/19
11/5 11/20 11/22 13/16 22/16
**tentatively [1]**  22/3
**tethered [1]**  14/18
**than [6]**  3/23 12/13 12/15
14/21 18/23 22/17
**thank [11]**  5/14 11/12 11/13
11/19 14/5 15/12 16/8 22/4
22/20 22/21 22/22
**that [137]**
**that's [19]**  3/22 4/9 12/2 12/15
12/25 13/11 13/13 13/17 14/13
16/4 17/2 17/8 17/25 18/3
20/20 21/4 21/20 21/23 22/10
**their [5]**  7/1 8/4 11/6 11/10
16/17
**them [3]**  6/1 20/23 21/11
**then [3]**  11/15 13/20 15/14
**there [15]**  3/24 6/18 9/8 9/19
10/2 11/21 15/8 15/9 16/15
17/19 20/11 21/1 22/7 22/9
22/10
**there's [9]**  5/11 12/11 12/22
12/25 13/4 13/5 13/25 17/24
21/16
**thereby [1]**  6/6
**therefore [2]**  18/2 20/14
**these [3]**  11/8 19/13 19/20
**they [9]**  10/16 14/10 14/12 15/6
16/1 17/21 19/19 19/21 21/11
**they're [1]**  16/21
**things [4]**  16/17 16/21 16/21
20/14
**think [27]**
**third [5]**  2/17 2/22 9/6 10/6
19/2
**this [48]**
**THOMAS [2]**  1/7 3/6

**those [1]**  21/2
**thought [2]**  22/12 22/19
**three [1]**  20/25
**Thus [2]**  8/18 10/16
**Tillamook [10]**  5/21 6/17 8/11
8/23 8/25 10/23 13/12 16/15
19/3 20/8
**time [4]**  5/12 8/11 18/9 18/13
**times [1]**  7/24
**title [1]**  12/11
**too [1]**  18/17
**took [1]**  18/5
**totally [1]**  17/13
**towards [1]**  5/5
**transcript [3]**  1/17 23/5 23/6
**transfer [1]**  12/11
**trial [1]**  21/11
**true [1]**  9/8
**try [4]**  3/16 3/21 3/23 22/1
**trying [1]**  17/23
**turn [1]**  5/6
**turns [1]**  21/13
**two [2]**  6/18 20/24
**type [4]**  12/25 13/19 14/25 20/2
**types [1]**  19/13

**U**

**U.S [2]**  4/24 15/1
**U.S.C [1]**  10/15
**ultimately [1]**  7/6
**under [7]**  7/4 7/8 7/16 15/2
21/6 22/1 22/21
**underlying [2]**  17/1 17/9
**understand [1]**  17/9
**undertook [1]**  7/10
**undisputed [1]**  14/7
**unfortunately [1]**  4/4
**Unit [1]**  2/8
**UNITED [4]**  1/1 1/19 2/16 2/21
**units [1]**  10/11
**unknown [1]**  13/14
**unlikely [1]**  8/24
**unrelated [1]**  16/18
**untethered [1]**  16/18
**until [3]**  7/3 12/11 13/4
**up [2]**  3/12 14/6
**upon [4]**  5/9 6/11 16/17 19/19
**us [2]**  5/15 22/5
**USDA [2]**  12/13 13/2
**USDA's [1]**  11/25
**use [2]**  12/19 13/3
**used [1]**  7/18
**using [4]**  5/24 8/8 10/25 17/6

**V**

**versus [1]**  3/5
**very [5]**  13/5 21/7 21/8 21/8
22/4
**video [2]**  3/10 3/12
**Videoconference [1]**  1/16
**VILSACK [2]**  1/7 3/6
**violate [2]**  8/9 20/22
**voluntarily [2]**  7/1 10/1
**voluntary [22]**  6/6 6/9 6/9 6/15
7/7 7/16 7/18 8/19 10/20 10/24
16/5 16/25 17/4 17/11 17/22
18/10 18/21 20/20 21/4 21/9
21/15 22/13
**voucher [2]**  5/25 6/22

**W**

**wait [1]**  3/20
**waiver [1]**  14/17
**walk [1]**  19/25
**want [9]**  3/20 3/21 4/11 4/16
11/14 14/20 19/21 20/12 20/14
**wanted [2]**  14/10 15/7
**wanting [1]**  5/21
**warrant [1]**  13/20
**was [23]**  5/23 6/24 7/3 7/8 7/25
9/16 9/21 10/9 10/10 10/15
13/7 15/2 16/9 17/3 17/12
17/12 18/10 18/10 18/25 20/20
21/1 21/5 22/13
**way [11]**  15/22 16/16 17/20
17/21 18/2 19/10 19/13 19/19
20/13 21/23 22/9
**ways [2]**  7/15 12/17
**we [32]**
**we'll [1]**  3/17
**We're [1]**  17/15
**welcome [4]**  5/3 5/9 5/10 15/14
**well [11]**  3/13 3/18 4/4 4/15
11/21 12/10 13/10 15/2 19/7
20/6 22/12
**well-founded [1]**  11/21
**were [9]**  7/5 9/10 10/6 10/6
10/8 10/14 10/16 15/8 15/10
**what [21]**  13/10 13/10 13/21
14/3 14/12 15/20 16/4 16/13
16/23 17/2 17/9 17/17 17/25
19/15 20/1 20/4 20/9 20/20
21/4 21/17 21/17
**whatever [3]**  3/17 5/4 11/17
**whatsoever [1]**  9/12
**when [6]**  5/23 12/15 13/7 13/12
13/18 21/14
**where [7]**  10/9 12/3 12/15

# W

**where... [4]** 16/16 16/25 20/21 20/25
**whether [3]** 9/21 15/20 19/5
**which [7]** 7/12 8/9 19/2 20/22 21/3 21/22 21/24
**who [1]** 19/3
**why [4]** 4/3 17/10 18/3 22/11
**will [11]** 8/5 8/8 8/9 8/11 8/25 9/1 11/7 17/20 21/12 22/1 22/9
**wish [3]** 3/21 5/4 5/10
**withdraw [1]** 10/2
**withdrawal [1]** 10/17
**withdrew [2]** 7/1 10/5
**within [3]** 7/7 15/1 18/10
**without [6]** 13/24 14/3 17/7 19/4 19/8 23/6
**woefully [1]** 4/20
**won't [1]** 18/2
**WOODRING [1]** 1/3
**world [1]** 12/20
**worry [1]** 21/10
**would [29]**
**wouldn't [3]** 3/18 19/15 20/6
**wrong [3]** 6/14 10/23 21/18
**wrongful [1]** 8/2

# Y

**yes [5]** 3/15 4/1 4/13 4/17 4/22
**you [65]**
**you're [8]** 5/3 15/14 16/13 17/9 20/15 21/13 21/22 21/24
**you've [1]** 22/8
**your [22]** 3/10 4/11 4/13 4/16 4/18 4/20 5/15 11/19 11/20 13/16 15/4 16/14 16/14 17/23 18/8 18/22 18/25 20/19 21/21 21/25 22/15 22/22
**yours [1]** 5/13